939 So.2d 574 (2006)
STATE of Louisiana, Appellee
v.
Prentiss Burns CHANDLER, Appellant.
No. 41,063-KA.
Court of Appeal of Louisiana, Second Circuit.
September 8, 2006.
Rehearing Denied September 21, 2006.
*576 William D. Hall, P.L.C., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Laura Wingate, Ron Christopher Stamps, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
By an 11-1 vote, a jury convicted Prentiss Burns Chandler of aggravated rape in violation of La. R.S. 14:42. Chandler received the mandatory life sentence without benefit of parole, probation or suspension of sentence. In this appeal, Chandler asserts that his conviction for aggravated rape must be reduced to a conviction of forcible rape. We reject that claim. We also find no merit to Chandler's sentencing claim regarding the trial court's process in imposing the mandatory life sentence. For the following reasons, we affirm the conviction and sentence.

Facts
On May 16, 2002, M.R.H. was at home folding clothes when Chandler knocked at the door and asked to use the phone to call his girlfriend who lived two doors down. Chandler said his girlfriend was not home and he was locked out. He also told her he worked at the town houses where she lived but lied about his name. M.R.H. took her cordless phone to Chandler to use outside. She turned to give him "a little privacy" and clean the kitchen, but when she turned back, he was standing inside. Chandler then said his girlfriend did not answer and he needed to call her again. He began "making small talk." The victim said the situation made her "uncomfortable" and "nervous," and that she began thinking of a way out of the house. At the time of this offense, Chandler was 6'4" and *577 weighed 180 lbs. M.R.H. was 5'2" and weighed between 104-108 lbs.
Chandler dialed the phone again, but no one answered. He handed the phone back to the victim, moved closer and told her he needed sex. M.R.H. ran for the door, but Chandler "grabbed" her arms from behind. The victim struggled and screamed to attract attention from anyone who might be outside. Chandler told her to lie on the floor, and when she continued to struggle, he pinned her face down in the hallway. She "wouldn't let him" pull her shorts off and she tried to get away. He was too strong and held her down with one hand while he removed her shorts with the other. During the struggle, M.R.H. hit her head on the ceramic tile in the bathroom as Chandler held her down while removing his clothing. When Chandler tried unsuccessfully to penetrate her, he told M.R.H. to go upstairs. The victim "took off running" for the front door wearing no shorts or panties. She made it partially outside, screaming, before he pulled her back in, slammed the door and locked it. Chandler twice warned the victim not to do that again or she would "get hurt."
Chandler threw the victim on the stairs, grabbed her by the arm and forced her upstairs. She asked him twice if he was going to kill her, and the defendant told her to do as he said. Chandler made M.R.H. kneel next to her bed and anally raped her, never letting go of her arm and leaning over her as she knelt. Chandler then instructed the victim to lie on the bed, which she did while he held her arm, and tried to vaginally rape her. After using Carmex lip balm retrieved from her nightstand, he penetrated her. Chandler repeated that M.R.H. would not get hurt if she did what she was told. He instructed her to stop crying, and tried to kiss her right breast. The victim "kept trying to move away from him" and asked the defendant not to ejaculate inside her. She testified Chandler made her stretch face down across the bed, and that as he anally raped her again, she began reading aloud from her Bible. Chandler grabbed the Bible, threw it against the wall and told M.R.H. to put on bikini bottoms and stand facing the wall. Chandler masturbated and made M.R.H. "lay back down," as he ejaculated on her stomach.
M.R.H. began to "go into shock" as Chandler apologized, grabbed the phone, and told her she did not need to call the police as he planned to commit suicide. As the defendant kept telling M.R.H. not to call the police, he began "curling" the phone cord in his hands. M.R.H. again asked Chandler if he was going to kill her. He told her he would come back and kill her if she called the police. He took the phone cord with him when he left. M.R.H. found an extra phone cord and called her boyfriend (her husband at the time of trial) who arrived and called 911. M.R.H. was transported to the hospital for examination. After the victim identified Chandler as the perpetrator, he was arrested on charges of aggravated rape. Chandler confessed to raping M.R.H.
The jury convicted Chandler of aggravated rape after receiving a jury charge defining that crime and the lesser and included offense of forcible rape. Subsequent to his conviction, Chandler filed motions for reconsideration of sentence, post verdict judgment of acquittal and new trial, all of which were denied by the trial court. This appeal ensued.

Discussion
In raising the sufficiency of the evidence for the conviction for aggravated rape, Chandler presents various arguments. He argues that M.R.H. did not resist the rape to the utmost. Next, he claims the threats to M.R.H. were merely implied and *578 vague threats of physical violence, which fall only within the definition of forcible rape [La. R.S. 14:42.1 A(1)], and not those of great and immediate bodily harm, required for aggravated rape [La. R.S. 14:42 A(2)]. He then points out the lack of distinguishing guidelines for the determination of whether an aggravated rape under La. R.S. 14:42 A(2) occurred, or to the contrary, whether a forcible rape under La. R.S. 14:42.1 A(1) exists. Notably, Chandler concedes that the evidence was sufficient to convict him of forcible rape. Nevertheless, he asserts that the alleged lack of definitional guidelines between aggravated rape and forcible rape and the failure of the trial court to instruct the jury on this subject improperly allowed the jury to select a greater or lesser sentence by choosing between the two closely-defined grades of rape.
In general, the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422.
The testimony of a sexual assault victim alone is sufficient to convict a defendant. State v. Richard, 39,705 (La.App. 2d Cir.5/11/05), 902 So.2d 1271, writ denied, 05-1713 (La.2/10/06), 924 So.2d 161. See also State v. Simpson, 39,268 (La.App. 2d Cir.1/26/05), 892 So.2d 694. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Elzie, 37,920 (La.App. 2d Cir.1/28/04), 865 So.2d 248, writ denied, 04-2289 (La.2/4/05), 893 So.2d 83. See also Simpson, supra; State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490.
There are two relevant definitions for aggravated rape raised by this case and Chandler's arguments, Subsection A(1) and Subsection A(2). La. R.S. 14:42 A(1) and (2).[1] Subsection A(1) requires the victim's *579 resistance of the act "to the utmost." There is no element of the victim's resistance in Subsection A(2) because "the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the apparent power of execution." In an early case, a defendant argued that he could only be prosecuted on one of these counts for aggravated rape because of the inconsistency in the two definitions. State v. Jackson, 227 La. 642, 80 So.2d 105 (1955). The supreme court answered defendant as follows:
This argument is illogical and does not take into account the realities of the situation. Moreover the statute itself provides that aggravated rape may be committed under "any one or more of the following circumstances." This means that the circumstances may consist entirely of those set out in any one of the subsections or may be a combination of those set out in any two or in all three.
Id. at 107.
Before any consideration of Chandler's arguments regarding the application of the forcible rape statute, the sufficiency of the evidence must first be judged solely from the standpoint of the elements of the crime of aggravated rape. As the decision in State v. Jackson indicates, Subsections A(1) and A(2) of the aggravated statute present two separate and independent definitions for the crime. Subsection A(1) is similar to the early common law definition for the crime with its requirement of evidence showing the rape victim's "utmost" resistance to the act.[2] The requirement for victim resistance has been the subject of criticism in various commentaries and the utmost resistance test no longer predominates across the nation as the key definitional element for aggravated rape. Michelle J. Anderson, Reviving Resistance in Rape Law, 1998 U. Ill. L.Rev. 953 (1998); Joshua Mark Fried, Forcing the Issue: An Analysis of the Various Standards of Forcible Compulsion in Rape, 23 Pepp. L.Rev. 1277 (1996).
Although Subsection A(1)'s "utmost" resistance requirement need not be our measure for aggravated rape in this case, two points should be made concerning its continued place in Louisiana's definitional structure of the crime. First, the base definition for "rape" as set forth in La. R.S. 14:41 A[3] proscribes "sexual intercourse" "without the person's lawful consent." Second, rape may occur in a setting between acquaintances, as well as between non-acquaintances, and the victim's lack of "lawful consent" may be the subject of considerable dispute by the defense in certain alleged cases of acquaintance rape. Therefore, the victim's resistance, as opposed to the victim's being prevented from resisting, may in certain cases of acquaintance rape become the critical factual inquiry, making Subsection A(1)'s definition *580 for aggravated rape more vital for gauging the victim's lack of lawful consent.
Turning to Subsection A(2) of our aggravated rape statute, this definition of the crime does not set forth any element of resistance by the victim, requiring only the existence of a threat "of great and immediate bodily harm, accompanied by apparent power of execution." It is important to note that the victim need not first resist and then be prevented from resisting for the circumstances of Subsection A(2) to be met. This is because the gravity of the threat may be readily apparent and the victim need not ever chance the harm. Like the threat of a dangerous weapon, which is addressed by the similar language of Subsection A(3)[4] of the aggravated rape statute, the victim is not required to test the application and magnitude of the threat by first resisting and subjecting herself to harm. A fair reading of Subsection A(2) requires no showing of victim resistance.
Additionally, Subsection A(2) does not require the defendant's use of force other than the inherent egregious force of the rape itself. Again, for an analogy, it is clearly understood that in the deadly weapon setting addressed by Subsection A(3), the rapist with a gun need not use it to harm the victim but only to threaten her. The same is true for Section A(2). The magnitude of the defendant's use of force, other than the rape itself, is not an element of the crime.
In summary, Subsection A(2) does not ask the fact-finder to determine how much more the victim might have resisted nor how much force was used by the defendant. Instead, the appropriate focus under Subsection A(2)'s definition of aggravated rape is the existence of a threat of harm and the power to carry it out.
Last, before we leave this analysis of the crime of conviction, it is significant to remember that our legislature first enacted these categories for aggravated rape in 1942, when the only other grade of rape included in the Code's enactment was simple rape. The same language of the Criminal Code remains in our law today. Simple rape has long had as its emphasis the incapacity of the victim to give lawful consent to sexual intercourse because of stupor caused by an intoxicating agent or other cause or unsoundness of mind. La. R.S. 14:43. Therefore, according to Chandler's present argument, before the enactment in 1975 of the crime of forcible rape, a defendant's actions identical to those of the perpetrator in this case would not constitute the crime of rape under any grade in our law. In the absence of proof of "utmost resistance" by M.R.H., Chandler argues that the threat to her by his actions does not qualify to support the crime of aggravated rape under Subsection A(2) of the statute. With simple rape also suspect under these facts because of the lack of a mental impediment attributable to the victim, this would mean that under the original scheme of our Criminal Code, this heinous crime pre-1975 would fall between the cracks of the legislative purpose of Subsection A(2) with no criminal consequences regarding rape. We reject as historically unsound that view of the scope of our aggravated rape statute.
With victim resistance and the force of the defendant not relevant tests, the jury in this case was charged under Subsection A(2) to consider the threat that was posed by the home invasion of this *581 non-acquaintance of M.R.H. They also considered the "apparent power" of the much larger intoxicated defendant to inflict great and immediate bodily harm on M.R.H. Those facts alone, given for consideration of the threat and accompanying fear visited upon M.R.H., persuade us of the sufficiency of the evidence for aggravated rape under Section A(2). A non-acquaintance, home invasion, sexual attack, by a large male on a female has always, in our opinion, been included within the purpose and language of Louisiana's definition of aggravated rape. Moreover, there was much additional evidence of actual force and harm to M.R.H. and the resistance she gave, both physically and verbally. That is relevant evidence of her fear and understanding of the threat that was present, and is not considered herein in any effort to measure her resistance as an element of the crime under Subsection A(2).
Next, to best understand Chandler's arguments regarding the issue of where aggravated rape ends and forcible rape begins, we will compare the two statutes which each define a rape committed under the following circumstances:
(i) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. [Aggravated rape, La. R.S. 14:42A(2)]; or
(ii) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. [Forcible rape, La. R.S. 14:42.1A(1)].
The closeness of these definitions caused the writer of the plurality opinion in State v. Parish, 405 So.2d 1080, 1086 (La.1981), to observe in dicta that "[t]he legal definition of this form of aggravated rape is virtually identical to that of forcible rape."
Chandler does not raise any clear constitutional attack on the effect of these two statutes which were read to the jury as part of the charge. Nevertheless, the Louisiana Supreme Court has consistently upheld the constitutionality of Louisiana's aggravated rape statute and rejected arguments that the statute is unconstitutionally vague and overbroad due to the virtual lack of difference between aggravated rape, La. R.S. 14:42 A(2) and forcible rape, La. R.S. 14:42.1 A(1). State v. Willie, 422 So.2d 1128 (La.1982); State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
It is within the function of the legislature to make laws defining what breaches of the public peace shall be made punishable. Accordingly, it may specify various degrees of the same crime and require a different measure of punishment for each. State v. Ritchie, 590 So.2d 1139 (La.1991). The fact that a defendant's conduct falls within the purview of two criminal statutes is not unusual. A statutory scheme which gives the prosecutor the option to choose between two properly defined offenses for the same crime does not violate any constitutional rights of an accused. Indeed, the prosecution may be under either provision if the statutes do not discriminate against any class of individuals. United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445; State v. Walters, 440 So.2d 115 (La.1983).
In enacting La. R.S. 14:42 A(2) and 14:42.1 A(1), it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime. State *582 v. Willie, supra. This statutory scheme vests no sentencing authority in the jury which simply determines which verdict is appropriate after reviewing the evidence; it is the legislature which determines the sentence. State v. Lanerie, 527 So.2d 1146 (La.App. 3d Cir.1988).
From this authority and in light of our opinion concerning the application of the aggravated rape statute and the sufficiency of the evidence in this case, we reject Chandler's arguments that the closeness of the definitions of the two crimes taints the jury's verdict. As a matter of law, Chandler directs this court to no authority to reduce this verdict which was sufficiently supported by evidence of aggravated rape beyond a reasonable doubt. The jury's prime function of determining the sufficiency of the evidence for a charged crime was fully and correctly exercised in this case. Additionally, for the same reasons, we find no error in the trial court's refusal to give a special jury charge quoting the language of State v. Parish, supra, regarding the "virtually identical" crime definitions for aggravated and forcible rape. The trial court's charge read the definitions of both crimes and the applicable sentences to the jury. This was sufficient to advise them of the elements of the crimes and, by implication, to inform them of their power to give a responsive verdict of forcible rape.
Chandler next argues that the trial court erred in refusing to allow him to cross-examine Brenda Smith as to her expert qualifications outside of the presence of the jury and in allowing her to testify as an expert witness. Specifically, Chandler argues that the trial court failed to exercise its "gatekeeping" function by allowing questioning of the witness before the jury regarding her qualifications. Chandler also argues that the state improperly elicited testimony from the witness from her experience regarding the lack of physical injury in the majority of rape cases.
As provided by La. C.E. art. 702, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In State v. Foret, 628 So.2d 1116 (La. 1993), the Louisiana Supreme Court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. State v. Chauvin, 02-1188 (La.5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. Daubert, 509 U.S. at 592-594, 113 S.Ct. 2786. In Foret, supra, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. Id. Thus, Louisiana has adopted Daubert's requirement that in order for technical or scientific expert testimony to be admissible under La. C.E. art. 702, the scientific evidence must rise to a threshold level of reliability. Daubert's general "gatekeeping" *583 applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226. The trial court may consider one or more of the four Daubert factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. Id. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. Kumho, supra at 526 U.S. at 142, 119 S.Ct. 1167.
In establishing the witness's qualifications as an expert in sexual assault examination, the prosecution first asked Smith's job title and description. Smith testified that she was a registered nurse and sexual assault nurse examiner who performed sexual assault examinations for the police department. Smith described her education, training, and certification, as well as the customary procedure for performing the examination and the types of evidence that are collected in such examinations. She explained that the evidence was collected as part of a "standardized kit" so that the procedure is conducted in the same manner each time. She testified that she had performed "approximately 300" of these exams and had been qualified as an expert witness once before. The state then tendered the witness for cross-examination on her qualifications.
The defense counsel objected, and the witness and jury were removed from the courtroom at the defense counsel's request. Defense counsel then argued that the witness could not be questioned as to her qualifications in front of the jury without prejudicing the defendant. The trial court encouraged the defense counsel to cross-examine the witness, but denied the procedural request, stating that the law did not require that a witness "be examined outside the presence of the jury." The defense counsel also objected as to lack of a foundation for proper tender as an expert, and the trial court ruled the objection as premature. After defense counsel refused to examine the witness in the presence of the jury, the state offered the witness as an expert in sexual assault examination. The court accepted the witness as an expert, and defense counsel again objected.
Significantly, Smith testified primarily as a fact witness because of her observation of M.R.H. after the incident. She reported the bruises, abrasions, vaginal redness, and vaginal and anal tears that she observed when examining the victim. She explained that M.R.H. was anxious, but cooperative. Her opinion testimony based upon her experience was that many rape victims receive no significant injury.
Defense counsel interrupted the questioning which elicited Smith's answer about prior examinations, objecting that no foundation had been laid regarding the facts surrounding the 300 cases. He again urged the right to question the witness as to her qualifications outside the jury's presence. Counsel then requested a mistrial which the trial court denied. The testimony was allowed. Defense counsel proceeded to cross-examine the witness regarding the victims involved in her 300 previous examinations and the standard procedures for the exams.
On appeal, Chandler argues that the trial court erred in refusing to allow voir dire of the witness outside of the presence of the jury. In support of his position, the defendant's brief cites brief State v. King, 38,983 (La.App. 2d Cir.10/27/04), 886 So.2d 598, writ denied, *584 04-2949 (La.3/24/05), 896 So.2d 1032, in which trial court removed the jury from the courtroom during examination of a witness before qualifying him as an expert. Nevertheless, King, supra, offers no authority or precedent for requiring the trial judge to remove the jury during the voir dire of an expert witness, nor has Chandler cited any authority which mandates such removal of the jury. Accordingly, no reversible error has been demonstrated.
Chandler also complains regarding Smith's experience as a sexual assault nurse from which she learned from most of the physical exams involving rape victims that no physical injuries occurred. He argues that such expert opinion prejudiced his case because it implies that if the victim had injuries, then the force of Chandler's battery upon M.R.H. must have been great.
First, we find no error in the trial court's acceptance of Smith as an expert based primarily on her actual experience with rape victims. While initially refusing to cross-examine Smith on her expertise when tendered as an expert, defense counsel did ably cross-examine her as to the details and specifics of the other 300 cases. From our review of all the testimony, her opinion gleaned from that experience was appropriate expert testimony for the jury to weigh. Moreover, as we have discussed above, the force applied by Chandler to batter M.R.H. into submission to the actual rape was not a crucial element for the jury to specifically measure. The threat he presented to her as an intoxicated home intruder is the test of Subsection A(2) of the aggravated rape statute, whether or not force was used to cause bodily harm, other than the trauma of rape itself. On these grounds, we find no merit to Chandler's claims.
Chandler next complains regarding the excessiveness of the sentence imposed. Specifically, he argues that the trial court erred in refusing to allow testimony regarding mitigating circumstances at sentencing hearings in violation of State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, and in imposing a constitutionally excessive sentence.
On October 4, 2004, after his conviction, Chandler filed a Motion to Declare Life Sentence Excessive and To Impose Term of Years. At his sentencing hearing on November 10, 2004, Chandler sought a hearing to introduce evidence to show that he was the exceptional defendant for which departure from the mandatory minimum sentence of La. R.S. 14:42 was appropriate. The court denied Chandler's request for the hearing after determining that the sentence was mandatory. Specifically, the court ruled that "the defense is not entitled to present testimony tothat would require the Court to consider deviating from the mandatory life sentence." The defense objected to the ruling and requested a proffer of the evidence sought to be presented at the hearing. The court allowed only a written proffer of the witnesses' testimony. Afterwards, Chandler made a statement to the court in which he apologized to the victim and the state and asked the victim to forgive him. With that, the court sentenced Chandler to the mandatory life sentence.
After sentencing, Chandler's new counsel filed a Motion to Reconsider Sentence, re-urging the request for an evidentiary hearing. At the hearing for reconsideration of the sentence and post-sentence bail, counsel informed the court that he had four witnesses who were available to testify. The court reiterated its position of its lack of authority to deviate from the mandatory minimum and again denied counsel's request for a hearing. Counsel objected and requested an opportunity to amend the proffered evidence if necessary. *585 No objection to the request was offered by the state and additional proffered evidence was received.
In considering Chandler's assertions, we have reviewed the leading cases of State v. Dorthey, 623 So.2d 1276 (La.1993) and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, which address this issue of mandatory minimum sentence in the context of the habitual offender law. Johnson held that downward departure from a minimum sentence may occur if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. See also, State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). The Johnson test for the "exceptional" defendant allows the defendant to present evidence of these factors in mitigation, and the trial court exercises its sentencing power in applying the test.
In State v. Fobbs, supra, the Louisiana Supreme Court extended the Dorthey/Johnson holding to mandatory minimum sentences beyond habitual offender cases. The per curiam ruling, however, did not address a case involving a mandatory life sentence. With the Johnson test applicable, did the trial court err in refusing to consider the evidence and is a remand required for the application of the trial court's sentencing discretion after consideration of the evidence?
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D)(1). It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies, and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Stokes, 36,212 (La. App. 2d Cir.9/18/02), 828 So.2d 631, writ denied, 02-2807 (La.9/5/03), 852 So.2d 1023; State v. Koon, 31,177 (La.App. 2d Cir.2/24/99), 730 So.2d 503. The decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature. Id. The assertion that the mandatory life sentence for aggravated rape is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Stokes, supra; State v. Ingram, 29,172 (La.App. 2d Cir.1/24/97), 688 So.2d 657, writ denied, 97-0566 (La.9/5/97), 700 So.2d 505.
Johnson held that the courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the legislature. Johnson, supra at 676. The excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court. Dorthey, supra at 1280, citing State v. Sepulvado, 367 So.2d 762, 764 (La.1979).
From this review, we find that the "rare circumstances" described by Johnson in which a mandated sentence can be altered are even less likely in the case of the life sentence chosen by the legislature for this single crime. The life sentence punishment selected by the legislature is for a single crime, unlike a mandatory minimum sentence under our habitual offender law where the rare combination of repeated, yet less egregious, crimes may lead to an excessive punishment. The mandatory minimum sentence for aggravated rape is not a term of years, where the trial court's discretion in fixing a term is still involved and where the defendant may receive the *586 benefit of parole. The "tailoring" of this sentence by the legislature was for life because the culpability of offenders and the gravity of the offense are so great.
Accordingly, from our review of the circumstances of this case and in view of the mandated life sentence which is not unconstitutionally excessive, we find that remand to the trial court for review of the proffered evidence is unnecessary. This assignment of error is without merit.

Decree
For the foregoing reasons, we affirm Chandler's aggravated rape conviction and sentence.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 14:42 provides, in pertinent part:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
[2] See, Dale E. Bennett, The Louisiana Criminal CodeA Comparison with Prior Louisiana Criminal Law, 5 La.L.Rev. 6 (1942), documenting the overlap in the Louisiana criminal law with the common law crimes prior to the adoption of the Louisiana Criminal Code.
[3] La. R.S. 14:41 A provides: Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
[4] La. R.S. 14:42 A(3) provides for the circumstance of aggravated rape "[w]hen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon."