STEWART, J.
hA jury found the defendant, James R. Radican, Sr., guilty of molestation of a juvenile, in violation of La. R.S. 14:81.2. He was sentenced to serve 15 years’ imprisonment at hard labor, with credit for time served, and was ordered to register as a sex offender. The defendant now appeals. We affirm the defendant’s conviction and sentence.
FACTS
The defendant and Melanie Roberts were married in June 2001, and had one daughter, R.R., born on February 18, 2003. After they divorced in 2004, the defendant was granted supervised visitation with R.R., every other weekend, pursuant to a joint custody agreement. After approximately one year of the defendant exercising his visitation, Roberts discovered that the defendant had been molesting R.R.
The defendant was indicted for molestation of a juvenile on September 28, 2009, and arrested the next day.
The state filed a notice of intent to use evidence of other crimes on February 8, 2011. Specifically, the state sought to introduce evidence that the defendant was arrested on May 12, 2006, for molestation of a juvenile involving A.R., his stepdaughter, but that he pled guilty to unauthorized entry of an inhabited dwelling. On March 14, 2011, a jury was selected. On March 15, 2011, a Prieur[1] hearing was held, prior to the commencement of the trial in this matter. At the Prieur hearing, A.R., whose date of birth is August 16, 1996, testified that she is the daughter of Melanie Roberts, and the defendant was her stepfather. She stated that on several occasions when |?she was approximately five years old, while her mother was at work, the defendant would take her into a room, pull her pants and panties down and touch her private parts. Although she could not recall how many times the defendant touched her inappropriately, she knew it was a lot. A.R. further testified that her half-sister, R.R., would cry and beg her to go with her to visit the defendant. A.R. stated that she accompanied her sister on two occasions, and both times the defendant would take R.R. to the bathroom in the back of the house, and they would not return for 30 minutes. A.R. stated that when R.R. came back from the bathroom, she looked “nervous” and “awkward.”
Melanie Roberts, who testified about how she learned from R.R. of the abuse, stated that one evening in 2006, she laid R.R. down on a towel to dress her after her bath, and R.R. was touching her vaginal area. When she told her to stop and asked her what she was doing, R.R. replied that “my daddy does it to me and he hurts my boo boo.”
Following arguments by counsel, the court ruled that the use of other crimes *737 evidence would be admissible as it showed opportunity, intent, preparation or plan.
Trial began with the testimony of Dr. Neal Boris, an expert in child psychiatry. Dr. Boris testified that sexually abused children, specifically young children ages three years old through five years, generally act out sexual behavior vrith dolls. He further testified that sexually abused children display symptoms of post-traumatic stress disorder (PTSD). He stated that there has been no research or literature that indicates that | «¡watching other people involved in sexual encounters causes PTSD in young children.
Brenda Cameron, R.R.’s great-aunt, testified that she has brought R.R. to meet the defendant for his weekend visitation on at least two occasions when he was alone without any supervision by his mother or grandmother.
Alice Counts, R.R.’s maternal grandmother, testified that pursuant to a child custody agreement, the defendant was allowed supervised visitation with R.R. every other weekend from 6:00 p.m. on Friday to 6:00 p.m. on Sunday. Those visits were to be supervised either by his mother, Alice Stokes, or his grandmother, Ella Randolph. Counts testified that she and her husband would meet the defendant’s mother for the defendant’s visitation weekends. She further testified that they began to notice after a few visits that R.R. would scream and holler not to go, and when they picked her up, she would get in the car, not talk and just stare out the window. Once they were home, R.R. did not want them to take her clothes off or change her diaper, and she would be angry.
Counts testified that no one was allowed in the room when R.R. and A.R. were interviewed at the Gingerbread House. She further testified that she did not question or coach A.R. to help her remember. On cross-examination, she reiterated that she had no idea what A.R. stated in the interview at the Gingerbread House.
Melanie Roberts testified that prior to her marriage to the defendant, she had a daughter, A.R., from a previous relationship. She also has a |4younger daughter, K.R., with her current husband. Roberts and the defendant divorced in 2004, and at the time, they entered in a joint custody agreement. A condition of the defendant’s visitation with R.R. was that it had to be supervised either by his mother or grandmother.
Roberts testified that after about a year of R.R. visiting with her father, her behavior changed:
Almost every occasion, as soon as you put her in that car she would just scream and holler and kick. Well everybody played it off that she just didn’t want to be in her car-seat and that’s just not true. You could just tell that something was wrong. And then whenever you would get her back on Sunday or two weeks or however long she was there to stay, she would be just like blank. Just, you know, come here and let me hold you, or come get in my lap or whatever, and it was just be like [sic] she wasn’t even in there. So that kind of had me wondering why she was acting like that.
One evening in 2006, almost a year after the supervised visitation with the defendant began, Roberts had given R.R. a bath and laid her down on a towel to put on her pull-up and clothes, and she noticed R.R. began to “touch herself.” Roberts asked R.R., “What are you doing?,” and R.R. replied, “My daddy does it to me.” She then asked R.R. “What else does he do?” R.R. stated that “He hurts my boo boo,” which Roberts stated refers to her bottom-end. Roberts testified that R.R. told her *738 that “Daddy put his finger in my cuckoo and he hurts my boo boo.” R.R. was only two years old at that time.
Roberts stated that R.R. had recently been hospitalized because she was caught trying to molest her younger sister, K.R. She testified that no one ever performed any sexual acts in front of R.R.
| ^Roberts also testified that she did not view or overhear the interviews of her children at the Gingerbread House. When questioned whether she had ever told her daughter, “I got your booty,” in any context, she could not recall ever saying such a phrase. On cross-examination, she testified that the supervised visitations were to take place in Morehouse Parish, at either the defendant’s mother’s house or grandmother’s house.
Roberts testified that R.R. has been diagnosed with bipolar disorder, post-traumatic stress disorder due to severe molestation, oppositional defiance disorder, attention deficit hyperactivity disorder and borderline schizophrenia. She stated that R.R. would throw tantrums when she was called by her given name, R.R., at school. She further stated that R.R. failed kindergarten because she was often home due to her constant tantrums.
A.R., R.R.’s half-sister, testified next. She testified in accordance with her prior testimony in the Primr hearing.
R.R., the victim, also testified. Prior to her being called, the trial court held a closed competency hearing to determine if she was able to testify due to her youthful age. Following some questioning by the trial judge, he ruled that she was competent to testify.
R.R. testified that one time when her mother took her out of the bathtub, she was “playing with herself,” and she told her mother that her daddy does that to her. She testified that the defendant is her father. Following R.R.’s testimony, the state rested its case.
Alice Stokes, the defendant’s mother, testified that her son did not own a vehicle. However, she stated that there may have been one occasion | fiwhen he borrowed his grandmother’s vehicle to pick up R.R. Stokes insisted that she met him at a gas station, and she then took R.R. with her. She testified that during the visitations she was always present, and when she worked nights, her son and R.R. would stay at her mother’s, Ella Randolph’s, house. She further testified that R.R. slept with her every time she visited, but she could not state whom she slept with when they (defendant and R.R.) stayed at Randolph’s house. She then testified that there was never any time that the defendant was alone with R.R. She did not recall A.R. ever visiting when R.R. visited. Lastly, she confirmed that her son was, at the time of trial, 34 years old.
The defendant testified on his own behalf. He testified that he had an alcohol abuse problem, and that he has three convictions for driving while intoxicated. He further testified that he was previously charged with molestation of a juvenile, but he only pled guilty to a lesser charge only because he thought it was in his best interest. He insisted that he was not guilty. The defendant confirmed that he was 34 years old. He testified that he did not know why A.R. testified that he touched her, nor did he know why R.R., at the age of two or three years old, told her mother that “my daddy does this to me” while inappropriately touching herself.
On March 17, 2011, the jury returned a guilty as charged verdict. The trial court ordered a presentence investigation report and scheduled sentencing. On May 12, 2011, prior to sentencing of the defendant, defense counsel filed a motion for new trial and a motion for judgment of acquittal *739 17notwithstanding the verdict. Both motions were denied, and the defendant waived the sentencing delays.
After reviewing the PSI, together with the factors set forth in La. C. Cr. P. art. 894.1, the trial court sentenced the defendant to 15 years’ imprisonment at hard labor, with credit for time served. He was also ordered to register as a sex offender. Defense counsel then made an oral motion to reconsider, which the trial court denied. He now appeals.
LAW AND DISCUSSION
In the defendant’s sole assignment of error, he argues that there is insufficient evidence proving that he was guilty of molestation of R.R.
Molestation of a juvenile is defined in La. R.S. 14:81.2(A) in pertinent part:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 18(La.App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685; State v. Hill, 42,025 (LaApp. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The testimony of a sexual assault victim alone is sufficient to convict a defendant. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Chandler, 41,063 (La.App. 2 Cir. 9/8/06), 939 So.2d 574, writ denied, 2006-2554 (La.5/11/07), 955 So.2d 1277.
Based on the testimony presented, even in the absence of physical evidence, the state sufficiently proved that the defendant, being over the age of 17, committed lewd and lascivious acts upon R.R., a person under the age of 17, while she was under his control and supervision pursuant to La. R.S. 14:81.2.
19Melanie Roberts, the victim’s mother, testified that pursuant to a custody agreement, the defendant was allowed visitation with R.R. every other weekend, at which times she was under his control and supervision. After approximately a year of the ordered visitation schedule, Roberts testi *740 fied that she noticed a change in R.R. More specifically, she no longer wanted to visit her father, and when she returned from the visit, she was withdrawn. Alice Counts’s testimony corroborated Roberts with respect to R.R.’s behavior.
Roberts further testified that R.R. was touching her private parts, and told her that “my daddy does it to me and he hurts my boo boo.” R.R. was only two years old when she told Roberts what her father was doing to her. R.R. testified that she made that statement to her mother, and confirmed that the defendant is her father.
A.R. testified that when she accompanied R.R. on her visits with the defendant, he would take R.R. in the bathroom in the back of the house for approximately 30 minutes, and when R.R. returned she looked nervous and awkward. A.R. testified that the defendant had previously touched her inappropriately on her private parts on numerous occasions.
Roberts and Counts testified that R.R. demonstrated inappropriate sexual behavior when playing with dolls and even with her younger sister. Dr. Boris confirmed that behavior such as that was indicative of a sexually abused child.
After carefully reviewing the record, we find that the state satisfied its burden of proof. The evidence when viewed under the Jackson standard was | insufficient for the jury to find the defendant guilty of molestation of a juvenile pursuant to La. R.S. 14:81.2. This assignment of error is therefore without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. State v. Prieur, 277 So.2d 126 (1973).