NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 13-637

STATE OF LOUISIANA

VERSUS

NELSON CHAMBERS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 125227
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery,
Judges.

**AFFIRMED.**

**CONERY, J., concurs.**

**Michael Harson**
**District Attorney**
**Fifteenth Judicial District Court**
**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Harold D. Register, Jr.**
**216 Rue Louis XIV**
**Lafayette, LA 70508**
**(337) 981-6644**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Nelson Chambers**

**EZELL, Judge.**

Defendant, Nelson Chambers, was indicted on July 8, 2009, for aggravated rape, a violation of La.R.S. 14:42; aggravated burglary, a violation of La.R.S. 14:60; first degree robbery, a violation of La.R.S. 14:64.1; and unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. Defendant filed a "motion to waive jury trial" on September 23, 2011, which was granted on September 28, 2011. Trial commenced on December 5, 2011, and on December 8, 2011, Defendant was found guilty as charged. Defendant filed a "Motion and Order for New Trial and Deviation From Aggravated Rape Sentencing Guidelines" on February 10, 2012, and a "Supplement to Motion and Order for New Trial and Deviation from Aggravated Rape Sentencing Guidelines" on February 14, 2012. The motion and supplement were denied on February 16, 2012, without written reasons.

Defendant was sentenced to life imprisonment without the benefit of probation or suspension of sentence on the conviction for aggravated rape. He was also sentenced to five years at hard labor on each conviction for aggravated burglary, first degree robbery, and unauthorized use of a motor vehicle. All the sentences were ordered to be served concurrently.

Defendant has perfected a timely appeal, wherein he asserts that the evidence was insufficient, that the trial court erred when it denied his motion for a new trial, and that the life sentence was excessive under the circumstances. For the reasons set forth herein, this court affirms the convictions and the life sentence.

## FACTS

In the early morning of May 16, 2009, Defendant, Rosheed Guillory, and Demetrius Coleman followed the victim, N.U., and her friend, Jill Ashy, from a bar

in Lafayette to the victim's home.[1] The three men entered the victim's house uninvited and demanded money. They threatened the victim with a gun. Defendant and one other man took turns holding the victim down while the other had sexual intercourse with her. Afterwards, they took money and drove away in her car.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, this court acknowledges that the sentences given by the trial court are lenient as to first degree robbery and aggravated robbery, but we find that it is harmless error and the defendant has not raised the issue in his case. The court also acknowledges that the sentence issued by the trial court on the unauthorized use of a motor vehicle requires a sentence of "with or without" hard labor.

This was not addressed by the defendant in his appeal and we find it also to be harmless error. *See State v. Franklin*, 11-216 (La.App. 5 Cir. 12/28/11) 87 So.2d 860, *writ denied*, 12-337 (La. 9/12/12), 98 So.3d 811.

## ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, THREE, AND FIVE

Defendant asserts in assignments of error numbers one through three that the State failed to prove the offenses of aggravated rape, aggravated burglary, and first degree robbery beyond a reasonable doubt. In assignment of error number five, he argues the trial court erred when it denied his motion for a new trial. In the motion, as in the three alleged errors, he argues that the physical evidence contradicted the victim's testimony regarding the burglary, robbery, and rape. We will address all

---

[1] Pursuant to La.R.S. 46:1844(W), the initials of the victim are used to protect her identity.

four assignments of error together. He is not contesting the conviction for the unauthorized use of a motor vehicle.

The law regarding a review of sufficiency of evidence claim is well-established as set forth in *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness[es]. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See King, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

Furthermore, the testimony of a single witness is sufficient to support a verdict absent internal contradiction or irreconcilable conflict with the physical evidence, and any credibility determination made by the trier of fact is normally not within the purview of the reviewing court. *State v. Watson*, 39,362 (La.App. 2 Cir. 4/20/05), 900 So.2d 325; *State v. Hotoph*, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036.

**Evidence at Trial**

N.U. testified that on May 15, 2009, she, Ms. Ashy, and her aunt went out to LaFonda's in Lafayette for a drink and something to eat. After dinner, N.U. and her friend dropped N.U.'s aunt off at home and visited a few bars. They left Marley's Lounge at about 2:15 a.m. As they walked to Ms. Ashy's car, some men in the parking lot began yelling at them.

N.U. testified that shortly after they left the parking lot, they stopped and exchanged places because Ms. Ashy had a little too much to drink to be driving. Upon arriving at N.U.'s house, the ladies sat outside on the patio for a few minutes smoking cigarettes. At this point, Ms. Ashy felt sick and went inside to the bathroom. N.U. called a friend, Jared Stevens, to come over and play some video games. She then went into the house to check on her friend who was still in the bathroom located in the master bedroom.

As N.U. walked back through the kitchen to go back outside to await Stevens, three men burst in through the kitchen door. She stated she recognized the men as the men who yelled at her and Ms. Ashy as they were leaving Marley's Lounge.

N.U. testified one man punched her in the face, grabbed her by the hair, and bent her over the countertop. He banged her head against the countertop until she stopped struggling. While holding what she was told was a gun to her head, the men demanded money and threatened to kill her. Rosheed Guillory put his hand in her underwear and penetrated her with his finger. N.U. identified both Defendant and Guillory in court and testified that after pulling off her panties, they then took turns having sex with her as the other held her down.

N.U. said that one of the men appeared troubled by what was happening. He did not touch her and tended to stay out of her sight although she had made eye contact with him. She pleaded not to be killed because she had a five-year-old son. Suddenly, the three men left out the kitchen door. She ran to lock the door behind them when she heard a crash. Looking out through the kitchen window, she saw Guillory in her SUV, which had been parked in the carport. He was attempting to

back the SUV out, but Ms. Ashy's car was in the way. He managed to get the vehicle out by backing into Ms. Ashy's car and pushing it aside.

N.U. then ran to the bathroom and yelled for Ms. Ashy to come out. She went back out into the living room. She said that two of the men came back into the house, one of them, she thought it might have been Coleman, hit Ms. Ashy as she entered the living room. He grabbed a vase that was full of change, and the two men ran out. The two women looked for their cell phones to call for help but could not find them. They locked all the doors and crawled out a back bedroom window. N.U. testified that she thought the entire incident lasted about one-half hour to forty-five minutes. They ran to a neighbor's house, but the neighbor was unresponsive to their knocking. Just then, N.U's friend pulled up, and they used his cell phone to call the police. They drove around the block several times until the ambulance arrived. The two women were transported to Our Lady of Lourdes Hospital where a rape kit examination was performed.

N.U. testified that she was shown a photographic lineup the following Monday. She explained that, although she thought she might have recognized the Defendant, she was not certain and, upon the advice of the detective, did not make a positive identification of any of the men.

Ms. Ashy's testimony corroborated N.U.'s testimony up to the point she left the porch and went into the house. While she was in the bathroom, she heard arguing coming from the kitchen and thought that N.U.'s boyfriend had come over, and they were arguing. Ms. Ashy thought it might have been Defendant who hit her when she came out of the bathroom. She explained that she left her cell phone outside on the patio table when she went into the house. Ms. Ashy never saw the phone again. On cross-examination, Ms. Ashy was shown her cell phone

statement for May 15, 2009, to May 16, 2009, and asked about a 678-2451 number listed as an outgoing call placed several times between 3:30 and 4:16 a.m. on the morning of the incident. She did not recognize the number.

Demetrius Coleman pled guilty to aggravated burglary via a plea agreement with the State and had not been sentenced at the time of trial. As a part of the plea agreement, Coleman agreed to testify truthfully at Defendant's trial. He testified that he, Defendant, and Guillory were out on the town in Lafayette when they saw the two women. He said they asked the women the time, and they answered. The men then followed the women until they stopped in a bank parking lot, and as the women switched drivers, they had some words with them. Then the two women left.

Coleman stated they followed the women until they pulled into a driveway. They parked the car a few houses away because they did not want the women to know they had followed them. He said that Guillory got out of the car first and approached the house. After a few minutes, he and Defendant got out and hid behind a fence. Soon Guillory found them. He had a purse and a cell phone he said he got off the patio table. Coleman stated he entered the car to look for money while Defendant and Guillory trouped through the patio and into the house. When he entered the kitchen, Defendant was holding a cell phone to one of the women's head, and Guillory was on the counter demanding that she suck his "private." He stated that the woman pointed to a vase that had money in it, and he grabbed the vase and ran back out to the car. After a short while, Defendant came out and got in the car. Guillory was in the SUV. He crashed into the car as he was backing out of the driveway. He stated that Defendant received a few calls on his cell phone

while they were driving back to Opelousas. When shown Ms. Ashy's cell phone record, he identified the number 678-2451 as being Defendant's phone number.

The victim's SUV was found a few days later in St. Landry Parish. The vehicle had switched license plates. The plate was registered to a Floyd Guidry, who was Guillory's stepfather. The SUV's plate was located on Guidry's carport roof. Guillory lived with his stepfather.

Defendant also testified. He stated that upon arriving in Lafayette, Guillory wanted to walk around by himself, so they agreed to meet up again later. Defendant and Coleman then walked around until they met the two women earlier in the evening. They had conversations, and Defendant gave his phone number to N.U. Later, after the two men reunited with Guillory and returned to his car, Defendant saw that the victim had called him at about 12:30 a.m. He called her back, and she invited them to her house for drinks. When asked why he did not have cell phone records to show that call, he explained that although he had a cell phone on his person, he had a prepaid cell phone that he left in the car and it was that number he had given to the victim.

He said he could not get the records because he did not remember the number. He stated they met up with the two women at the bank and then followed them to the victim's house. He said that Guillory had not been invited, so he told him to drive around a little in the car while he and Coleman went into the house. They and the two women sat together in the living room talking, but eventually Ms. Ashy left the room and did not come back. Coleman then left the house. Defendant said he sat with the victim for about a half hour until they heard a crash. When they ran outside, he saw Guillory drive away in the victim's car.

7

When she insisted on calling the police, Defendant decided he did not want to become involved. He said that Coleman went back into the house, grabbed the vase with money in it, and they hurriedly left the scene. He said that within a few minutes after he left, he began to receive phone calls and knew they were from N.U. but did not answer. Defendant further stated the cell phone that he had left in the car was dead. He admitted that he drove around in N.U.'s SUV with Guillory the next day. He further admitted that he lied to the police about his whereabouts, telling them he had not been in Lafayette that night.

Including the testimony given, the physical evidence presented at trial placed Defendant, Guillory, and Coleman at the victim's residence in the early morning of May 16, 2009. DNA and fingerprint evidence put Defendant and Guillory in the victim's vehicle. DNA also placed Coleman in Ms. Ashy's car. Furthermore, Defendant's DNA was found on the waist band of the victim's panties. However, there was no spermatozoa or seminal fluid or any DNA evidence identified from the rape kit examination. There were also no identifiable or comparable fingerprints of any of the three men lifted from the kitchen of the victim's house.

Beside the theft of the victim's SUV, Defendant was convicted of aggravated rape, aggravated burglary, and first degree robbery.

**Analysis**

Rape is defined as an "act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). Furthermore, emission is not necessary. La.R.S. 14:41(B). Aggravated rape is defined, in pertinent part, as rape under the following circumstances:

> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

. . . .

(5) When two or more offenders participated in the act.

La.R.S. 14:42(A).

First degree robbery is defined as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La.R.S. 14:64.1(A).

Aggravated burglary is defined as:

[T]he unauthorized entering of any inhabited dwelling, or of any structure, water craft or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,

(1) Is armed with a dangerous weapon; or

(2) After entering arms himself with a dangerous weapon; or

(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

La.R.S. 14:60.

Defendant's primary argument is that the victim's credibility is at question because of the inconsistencies of her testimony and the physical evidence. However, the Defendant fails to list all the alleged inconsistencies, he did not cite to the record where each inconsistency occurred. Uniform Rules—Courts of Appeal, Rule 2-12.4, in pertinent part, provides:

The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The

9

court may disregard the argument on that error in the event suitable reference to the record is not made.

Accordingly, this court will disregard Defendant's assertion that the evidence was insufficient. Even if this court was to consider the assignment of error, the court notes in the victim's version of events, the three men entered her residence without her permission, and two of the men raped her, hit her repeatedly, and stole money and her vehicle, while threatening her with what she believed was a gun—a dangerous weapon. In this case, all the elements of aggravated rape, aggravated burglary, and first degree robbery were present. Obviously the trial court found the victim's and Coleman's testimony to be more credible than Defendant's testimony. Furthermore, the alleged inconsistencies concerned the lack of DNA or fingerprint evidence to substantiate the victim's testimony, rather than an actual conflict between the testimony and the evidence. As noted above, testimony of a single witness is sufficient to support a verdict absent internal contradiction or irreconcilable conflict with the physical evidence, even if there is no physical evidence of the rape, and any credibility determination made by the trier of fact is normally not within the purview of the reviewing court. *State v. Ware,* 11-337 (La. App. 3 Cir. 11/23/11) 80 So.3d 593, *writ denied,* 11-1391 (La. 3/9/12), 84 So.3d 549, *and writ denied,* 12-46 (La. 8/22/12), 97 So.3d 358; *Watson,* 900 So.2d 325.

While testimony established that it was Coleman who took the vase full of money from the victim's house and that it was Guillory who took the victim's cell phone, Defendant was present during the activity. Defendant would still be liable under the principal theory. "All persons concerned in the commission of a crime whether present or absent, and whether they directly commit the act constituting

10

the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24.

The evidence was sufficient to sustain the verdicts beyond a reasonable doubt. There is no merit to these assignments of error.

## ASSIGNMENT OF ERROR NUMBER FOUR

Defendant challenges the life sentence. He does not challenge the three, five-year concurrent sentences imposed on the remaining convictions. Defendant, who was a juvenile at the time of the offenses, was sentenced to the mandatory life imprisonment without the benefit of probation or suspension of sentence on the conviction for aggravated rape. La.R.S. 14:42(D). He asserts that in light of *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010), the life sentence without the possibility of probation or suspension of sentence is excessive in his case. However, *Graham* held that in the case of a juvenile offender who did not commit a homicide, the Eighth Amendment of the United States Constitution prohibited a life sentence without the possibility of parole.

He argues that although he is eligible for parole at some unspecified future time, the parole eligibility consideration is at the mercy of the Department of Corrections. He contends that this court should vacate the sentence and remand to the trial court with the instruction to make a specific determination as to when he will be eligible for parole. However, eligibility for parole is to be determined by the Department of Public Safety and Corrections, not the trial court. *State v. Leason*, 11-1757 (La. 11/23/11), 77 So.3d 933; *State v. Davis*, 97-817 (La.App. 4 Cir. 3/24/99), 735 So.2d 708, *writ denied*, 99-1422 (La. 11/12/99), 769 So.2d 651. The Legislature enacted La.R.S. 15:574(D) to provide a method for the Department of Corrections to calculate parole eligibility in cases involving minors.

11

Although the passage of this statute occurred after the sentence was imposed in this case, it does apply to this case.

While Defendant argues that this court should vacate the life sentence and remand to the trial court with the instruction to reduce the sentence to reflect that he was a juvenile at the time of the offenses and therefore the sentence is constitutionally excessive, he does not show otherwise why the sentence should be reduced. To rebut the presumption of constitutionality, the defendant must show that he is "exceptional, which in this context means that because of unusual circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Johnson,* 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 676 (quoting *State v. Young*, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, *writ denied*, 95-3010 (La. 3/22/96), 669 So.2d 1223). There is no merit to this assignment of error.

**DECREE**

For all of the above reasons, this court affirms Defendant's convictions and the sentence of life imprisonment without the benefit of probation or suspension of sentence.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.