PER CURIAM.[1]
Iiln these consolidated applications, rela-tors seek review following denial in the district court of their motions to correct an illegal sentence and for relief from their terms of life imprisonment at hard labor following their convictions for aggravated rape, La.R.S. 14:42, a non-homicide crime, committed when they were all under the age of 18 years.
Relators contend that the United States Supreme Court’s recent decision in Graham v. Florida, 560 U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), which held that the Eighth Amendment precludes sentencing a juvenile to life imprisonment without the possibility of parole for commission of a non-homicide offense, dictates setting aside their sentences of life imprisonment and resentencing. The sentences for relators Shaffer and Leason do not expressly preclude eligibility for parole, as does the sentence for relator Dyer.[2] However, 12Shaffer and Leason argue that they, *935 too, are ineligible for parole consideration by virtue of the proviso in La.R.S. 15:574.4(B), which has stated since 1968 La. Acts 191, that “[n]o prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years.” See Bosworth v. Whitley, 627 So.2d 629, 635 (La.1993)(“[S]ince [R.S.] 15:574.4(B) provides unequivocally that no inmate serving a life sentence shall be eligible for parole, parole consideration would be withheld from the defendant, by operation of law, despite the fact that the applicable penalty provision did not include the words ‘without benefit of parole.’ ”) (citing State v. Wilson, 362 So.2d 536, 539 n. 3 (La. 1978)). A similar commutation proviso controls access by inmates serving life sentences to the parole provisions in La.R.S. 15:574.4(A)(2), which otherwise state that: “[Notwithstanding ... any other law to the contrary, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five.”
In light of these commutation provisos, and the difficulty of obtaining commutation of sentence in this state, La. Const, art. 4, § 5(E)(l)(“The governor ... upon favorable recommendation of the Board of Pardons, may commute sentences.... ”)(emphasis added), relators argue that even those life sentences which by express terms do not preclude parole eligibility for inmates who committed non-homicide crimes when they were juveniles are directly governed by Graham. Drawing on prior jurisprudence of this Court, they further argue that the appropriate remedy is to resentence them according to the penalties provided for the next lesser and included responsive verdict of attempted aggravated rape.[3]
We agree with relators that Louisiana must comply with the Graham decision but reject their proposed solution. In Graham, the Supreme Court held |3that “for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole.” Graham, 560 U.S. at -, 130 S.Ct. at 2030. The Court specifically observed: “A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants ... some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Id. The Court noted that a life sentence without parole “deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency — the remote possibility of which does not mitigate the harshness of the sentence.” Id., 560 U.S. *936 at -, 130 S.Ct. at 2027 (citing Solem v. Helm, 463 U.S. 277, 300-301, 103 S.Ct. 3001, 3015, 77 L.Ed.2d 637 (1983) (striking down a life sentence without parole for a habitual offender convicted of issuing a “no account” check, Court notes the difference between the availability of parole as a “regular part of the rehabilitative process” and commutation of sentence as “an ad hoc exercise of executive clemency”)). Graham reflects the Supreme Court’s determination that juveniles are a special class of offenders deserving of special protections otherwise not accorded adult offenders, and for purposes of the Eighth Amendment, a juvenile is a person under the age of 18 years at the time of the offense. Id., 560 U.S. at -, 130 S.Ct. at 2030 (“Because ‘[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood,’ those who were below that age when the offense was committed may not be sentenced to life without parole for a non-homicide crime.”)(quoting Roper v. Simmons, 543 U.S. 551, 574, 125 S.Ct. 1183, 1198, 161 L.Ed.2d 1 (2005)) (state may not impose capital punishment on offenders who were under the age of 18 years when their crimes were committed).
The decision in Graham does not require this Court to order the immediate release of relators from state supervision or to adopt a remedy that would guarantee immediate release by virtue of credit for time served. To this extent, the rulings below are affirmed. Graham does require that relators, and all other persons similarly situated, have a meaningful opportunity to secure release as a “regular part of the rehabilitative process.” We therefore hold, as we must under Graham, that the Eighth Amendment precludes the state from interposing the Governor’s ad hoc exercise of executive clemency as a gateway to accessing procedures the state has established for ameliorating long terms of imprisonment as part of the rehabilitative process to which inmates serving life terms for non-homicide crimes committed when they were under the age of 18 years would otherwise have access, once they reach the age of 45 years and have served 20 years of their sentences in actual custody.[4] The state thus may not enforce the commutation provisos in |4La.R.S. 15:574.4(A)(2) and 15:574.4(B) against rela-tors and all other similarly situated persons, and the former provisions offer objective criteria set by the legislature that may bring Louisiana into compliance with the Graham decision.[5]
We therefore amend the sentence of relator Dyer to delete the restriction on parole eligibility. The Department of Corrections is directed to revise relator Dyer’s *937 prison master to reflect that his sentence is no longer without benefit of parole. Further, the Department is directed to revise relators’ prison masters according to the criteria in La.R.S. 15:574.4(A)(2) to reflect an eligibility date for consideration by the Board of Parole.[6] We reiterate that this Court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole “only for the best interest of society, not as an award of clemency.” La. R.S. 15:574.4.1(B). Access to the Board’s consideration will satisfy the mandate of Graham.
AFFIRMED WITH INSTRUCTIONS
JOHNSON, J., dissents and assigns reasons.

. Kimball, C.J., not participating.

. In 1971, an East Baton Rouge Parish jury found relator Shaffer guilty of aggravated rape in violation of La.R.S. 14:42 and sentenced him to death. Shaffer committed the crime when he was 16 years old. This Court vacated the sentence and remanded to the district court for resentencing. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971). The district court sentenced Shaffer to life imprisonment at hard labor. In 1965, relator Lea-son pleaded guilty in East Baton Rouge Parish to aggravated rape. He was 17 years old when he committed the offense. The court sentenced him to life imprisonment at hard labor. In 1981, an East Baton Rouge Parish jury found relator Dyer guilty of aggravated rape. Dyer was 17 years old at the time he committed the offense. The trial court sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This Court affirmed the conviction and sentence. State v. Dyer, 420 So.2d 686 (La.1982).
Under Louisiana law in effect at the time of their crimes, Leason and Dyer were considered adults, as they were over the age of 17 years. See, e.g., former La.C.J.P. art. 13(9) ("Child means a person less than seventeen years of age."); former La.R.S. 13:1569(3)(same); compare La.Ch.C. art. 116(3)(" 'Child' means a person who has not attained the age of eighteen years....”) However, all three relators were under the age of 18 years when they committed their crimes and thus fall within the class of offenders considered as juveniles for purposes of the Eighth Amendment, as the decision in Graham makes clear. With respect to the ages of relator, no dispute exists over the question whether they were under the age of 18 years at the time the crimes were committed, as confirmed by the birth dates and the dates of the crimes reflected in the records maintained by the Department of Corrections.

. Relators note that following the Supreme Court’s decision in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), which struck down Louisiana's then-mandatory death penalty for aggravated rape, this Court ordered inmates convicted of aggravated rape resentenced to the maximum term of imprisonment at the time of the offense for the next available responsive verdict, i.e. attempted aggravated rape. See, e.g., State v. Valentine, 364 So.2d 595, 596-97 (La.1978); State v. Bryant, 347 So.2d 227, 228 (La.1977); State v. Craig, 340 So.2d 191, 193-94 (La.1976). They argue that Graham requires a similar remedy in their cases. For relators Shaffer and Leason, resentencing in that manner would entail a sentence of 20 years at hard labor without any restriction on parole, probation, or suspension of sentence, Craig, 340 So.2d at 192, and result in their immediate release from state supervision. In the case of Dyer, resentencing would entail a sentence of 50 years imprisonment at hard labor, also without any restriction on parole, probation, or suspension of sentence. Valentine, 364 So.2d at 599.

. In 2011 La. Acts 285, the legislature added a new subsection (A)(4) to La.R.S. 15:574.4, to provide that offenders sentenced to any term of imprisonment with or without benefit of parole for an offense which is not a crime of violence or a sex crime may become eligible for parole after serving 10 years of the sentence and reaching the age of 60 years, subject to several special conditions. It appears that this recent legislation addresses a class of offenders who are already in their late 40’s and early 50's when they become subject to the custody of the Department of Corrections. Testifying before the Senate Committee on Judiciary B on June 14, 2011, in support of HB 138 which became Act 285, Warden Burl Cain observed that in addition to the costs savings anticipated from the new provisions, “we are going to replace their beds with a predator and predators should be in prison not dying old men.”

. We note that in its supplemental memorandum filed in the district court following a hearing conducted on April 6, 2011, for rela-tors Shaffer and Leason, the state specifically referenced the provisions of La.R.S. 15:574.4(A)(2), in response to relator's argument that the commutation provisos may not be severed from the parole provisions in the statute because there was no way of calculating a parole eligibility date at one-third or one-half of a life sentence, or at 85% of the term for crimes of violence. See La.R.S. *937 15:574.4(A)(1); 15:574.4(B). Referring to the provisions of La.R.S. 15:574.4(A)(2), the state argued below that severance of the commutation proviso "could afford petitioners parole eligibility without rendering the essence of parole meaningless.”

. This Court is aware that in the past session, the legislature addressed, but did not resolve, the Graham issue. 2011 House Bill 115 provided that an inmate serving life sentences for a nonhomicide crime committed as a juvenile would become eligible for parole consideration after serving 35 years of his sentence, subject to a variety of special conditions. However, House Bill 115 failed final passage and the legislature has by concurrent resolution directed the Louisiana Law Institute to convene a task force to evaluate Louisiana law for compliance with Graham and to report back with its findings and recommendations by January 1, 2012. Thus, our decision in relators’ cases is an interim measure (based on the legislature's own criteria) pending the legislature’s response to Graham. Cf. State v. Williams, 01-1650, pp. 32-33 (La.11/1/02), 831 So.2d 835, 861 (adopting as an interim measure procedures for determining whether a capital defendant is mentally retarded and so exempt from capital punishment under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct 2242, 153 L.Ed.2d 335 (2002), pending the legislature’s own response to the Atkins decision, see La.C.Cr.P. art. 905.5.1, 2003 La. Acts 698). We note that in Angel v. State, 281 Va. 248, 704 S.E.2d 386 (2011), the Virginia Supreme Court adopted a similar approach, in a state which has largely eliminated parole, by adverting to the provisions of Va.Code Ann. § 53.1-40.01, which state that any person sentenced for a felony offense, other than a Class 1 felony, who has served at least five years of his sentence and reached the age of 65 years, or has served at least 10 years of his sentence and reached the age of 60 years, may apply to the Parole Board for conditional release. The Virginia Supreme Court looked to that statutory provision as the state’s Graham response in the first instance because, as the court noted, the Graham decision does not require states to- release the offenders immediately or to "provide the opportunity for release at any particular time related to either the offender’s age or length of incarceration.” Angel, 704 S.E.2d at 402. The court concluded that the statutory regulation already in place "provides, as the Commonwealth argues, the 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' required by the Eighth Amendment.” Id. (quoting Graham, 560 U.S. at -, 130 S.Ct. at 2030).