WILLIAMS, J.
The defendant, Jaderrick Barrett, was charged by bill of indictment with the aggravated rape of G.K.,[1] in violation of La. R.S. 14:42, and the molestation of A.C., in violation of La. R.S. 14:81.2. Following a jury trial, the defendant was found guilty as charged. He was sentenced to serve life in prison without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction, and a concurrent sentence of 10 years at hard labor for the molestation conviction. The trial court also imposed 30 days' "default time in lieu of court costs" for both sentences. For the following reasons, we affirm the defendant's convictions. We amend the defendant's life sentence to provide that he is eligible for parole consideration under the criteria set forth in La. R.S. 15:574.4(D). Additionally, we amend the defendant's sentences to delete those portions that impose default jail time in lieu of payment of *167 court costs. Further, we remand this matter to the trial court with instructions to provide the defendant with the appropriate written notice with regard to the sex offender registration requirements.
FACTS
In 2008, the defendant, Jaderrick Barrett (also known as "J.D."), was 16 years old.[2] He entered an abandoned house with G.K.,[3] a 12-year-old mentally challenged girl, pulled down her panties and engaged in vaginal and anal sexual intercourse with her.[4] The Shreveport Police Department investigated the matter but the police officers were unable to locate the defendant. Subsequently, the active investigation stalled.
In December 2013, the defendant, who by then was 22 years old, was spending the night at the home of a family friend. A.C.,[5] his friend's 13-year-old daughter, was asleep in a bedroom of the house. A.C. stated that the bedroom contained bunk beds; she and her five-year-old brother were sleeping on the bottom bunk, and her mother instructed the defendant to sleep on the top bunk. According to A.C., the defendant entered the bedroom, lay on the floor next to her bed and began to touch her breasts and insert his finger inside her vagina. When the defendant heard A.C.'s mother near the door of the bedroom, he stopped his actions and climbed onto the top bunk of the bed. A.C.'s mother entered the bedroom and asked if she was alright; A.C. stated that she told her mother that she was "fine" because she was afraid to tell her what the defendant was doing to her. After A.C.'s mother left the room, the defendant pulled A.C. onto the floor, pulled her shorts down and partially penetrated her vagina with his penis until she was able to push him off of her. During the investigation, A.C. revealed prior acts of molestation against her by the defendant. Additionally, while investigating A.C.'s allegations, the police department determined that the defendant was the same individual implicated in the 2008 case regarding G.K.[6]
The defendant was subsequently arrested and charged by bill of indictment with the aggravated rape of G.K., in violation of La. R.S. 14:42, and the molestation of A.C., in violation of La. R.S. 14:81.2. Following a trial, a unanimous jury found the defendant guilty of the molestation charge; the same jury found him guilty of aggravated rape by a vote of 11-1. The trial court denied the defendant's motion for post-verdict judgment of acquittal and summarily sentenced him to the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction. With regard to the molestation conviction, the defendant was sentenced to serve 10 years at hard labor; the sentences were ordered to be served concurrently. Further, the trial court imposed 30 days' default time in lieu of the payment of court costs for both sentences.
*168 Subsequently, the trial court denied the defendant's motion to reconsider sentence.
The defendant appeals.[7]
DISCUSSION
The defendant contends the trial court erred in sentencing him to serve life in prison without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction. He argues that the sentence is constitutionally excessive because the offense was committed when he was a juvenile. Therefore, according to the defendant, the trial court was mandated to sentence him according to the principles set forth in Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012), and Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed. 2d 825 (2010). Further, the defendant argues as follows: the trial court erroneously failed to explore some of the "challenges" he experienced in his life prior to imposing his sentence; the trial court failed to consider his "potential for reform"; the trial court failed to craft a particularized sentence based upon his personal history and his "situation in life"; the trial court failed to order or consider a presentence investigation ("PSI") report; his sentence should not have been imposed without the benefit of parole pursuant to Graham v. Florida , supra ; and he should have been sentenced under the responsive verdict of attempted aggravated rape because, at the time he committed the offense, there was no constitutional penalty for aggravated rape committed by a person under the age of 18. See , State v. Valentine , 364 So.2d 595 (La. 1978) ; State v. Bryant , 347 So.2d 227 (La. 1977), and State v. Craig , 340 So.2d 191 (La. 1976).
The penalty for a conviction of aggravated rape[8] is a mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. La. R.S. 14:42. However, in Graham v. Florida , supra , the United States Supreme Court held that "for a juvenile offender who did not commit a homicide, the Eighth Amendment forbids the sentence of life without parole." Id. , 560 U.S. at 74, 130 S.Ct. at 2030. The Court further stated:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed *169 before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.
Id. at 560 U.S. at 75, 130 S. Ct. at 2030.
Thereafter, in State v. Leason , 2011-1757 (La. 11/23/11), 77 So.3d 933, and State v. Shaffer , 2011-1756 (La. 11/23/11), 77 So.3d 939, the Louisiana Supreme Court addressed the claims of juvenile offenders, at least one of whom had been convicted of aggravated rape and sentenced to life with an express restriction on parole eligibility. The Court amended that defendant's sentence to delete the restriction on parole eligibility and directed the Department of Corrections to revise the defendant's prison master to reflect that his sentence would no longer be without the benefit of parole. In both cases, the Court reiterated that it was not ordering the defendants to be released on parole. It stated, "The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole." State v. Leason , supra , at 937 ; State v. Shaffer , supra , at 943.
Additionally, in State v. Leason , supra , and State v. Shaffer , supra , the three defendants urged an argument similar to that of the defendant herein, i.e. , pursuant to Graham v. Florida , supra , the appropriate remedy would be to resentence them in accordance with the penalty provisions for the next lesser and included responsive verdict of attempted aggravated rape. The Court rejected that argument, thereby implicitly rejecting, for those defendants, the remedy afforded in State v. Craig , supra .[9]
Following the Court's decisions in State v. Leason , supra , and State v. Shaffer , supra , the legislature enacted La. R.S. 15:574.4, which provides, in pertinent part:
* * *
D. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment who was under the age of eighteen years at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder ( R.S. 14:30 ) or second degree murder ( R.S. 14:30.1 ), shall be eligible for parole consideration pursuant to the provisions of this Subsection[.]
* * *
Following the ruling in State v. Shaffer , supra , and the enactment of La. R.S. 15:574.4, this Court considered a similar issue in State v. Hedgespeth , 47,523 (La. App. 2 Cir. 11/14/12), 107 So.3d 743, writ denied , 2012-2594 (La. 5/3/13), 113 So.3d 210. In that case, the defendant had been convicted of aggravated rape committed when he was 17 years old. He was sentenced to life in prison without the benefit of parole, probation or suspension of sentence. In the wake of Graham v. Florida , supra , the defendant filed a motion to correct an illegal sentence. Subsequently, the trial court resentenced the defendant to life imprisonment but removed the restrictions with regard to the benefits for *170 parole, probation and suspension of sentence. On appeal, this Court held that the appropriate remedy for a mandatory life sentence for an offense committed when the defendant was a juvenile is to modify the life sentence and make the defendant eligible for parole consideration in accordance with the criteria set forth in La. R.S. 15:574.4.
In the instant case, in accordance with the pronouncements set forth in State v. Shaffer , supra , and State v. Hedgespeth , supra , we find that the appropriate remedy for the defendant's sentence of life imprisonment is to modify the life sentence to make the defendant eligible for parole consideration under the criteria set forth in La. R.S. 15:574.4(D). We hereby order the Department of Corrections to revise the defendant's prison master to reflect that his sentence is no longer without the benefit of parole. The defendant's remaining arguments are without merit.
The defendant also contends the trial court erred in ordering the mandatory life sentence for his aggravated rape conviction. He argues that the sentence imposed was constitutionally excessive.
In reviewing a claim of excessive sentence, the appellate court first considers whether the record shows that the trial court took cognizance of the sentencing guidelines in La. C. Cr. P. art. 894.1. State v. Jackson , 51,011 (La. App. 2 Cir. 1/11/17), 211 So.3d 639 ; State v. Taylor , 49,467 (La. App. 2 Cir. 1/14/15), 161 So.3d 963. The record should reflect adequate consideration of those guidelines. Id.
The reviewing court next determines whether the sentence is constitutionally excessive by considering whether the sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. La. Const. art. I, § 20 ; State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Lindsey , 50,324 (La. App. 2 Cir. 2/24/16), 189 So.3d 1104. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. Id.
It is within the legislature's prerogative to determine the length of the sentence imposed for the crimes classified as felonies, and the courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Morning , 49,300 (La. App. 2 Cir. 10/1/14), 149 So.3d 925, writ denied , 2014-2354 (La. 2/19/16), 186 So.3d 1179 ; State v. Armstrong , 32,279 (La. App. 2 Cir. 9/22/99), 743 So.2d 284, writ denied , 1999-3151 (La. 4/7/00), 759 So.2d 92. Accordingly, the decision to assess mandatory life sentences is also within the prerogative of the legislature. State v. Chandler , 41,063 (La. App. 2 Cir. 9/8/06), 939 So.2d 574, writ denied , 2006-2554 (La. 5/11/07), 955 So.2d 1277. Courts have repeatedly rejected the assertion that the mandatory life sentence for aggravated rape is a violation of the prohibition against excessive punishment found in the Louisiana Constitution. State v. Foley , 456 So.2d 979 (La. 1984) ; State v. Morning , supra ; State v. Chandler , supra ; State v. Ingram , 29,172 (La. App. 2 Cir. 1/24/97), 688 So.2d 657, writ denied , 1997-0566 (La. 9/5/97), 700 So.2d 505.
In State v. Dorthey , supra , and State v. Johnson , 1997-1906 (La. 3/4/98), 709 So.2d 672, the Louisiana Supreme Court addressed the issue of mandatory sentences in the context of the habitual offender law. The Court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's *171 failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. State v. Thomas , 50,898 (La. App. 2 Cir. 11/16/16), 209 So.3d 234 ; State v. Chandler , supra . This rule has been extended to mandatory sentences beyond habitual offender cases. See State v. Chandler , supra , citing State v. Fobbs , 1999-1024 (La. 9/24/99), 744 So.2d 1274.
The "rare circumstances" in which a mandated sentence can be altered are even less likely in the case of a life sentence chosen by the legislature for a single crime, such as aggravated rape or second degree murder. State v. Chandler , supra . In such crimes, unlike the mandatory minimum sentence under the habitual offender law, the "tailoring" of the sentence by the legislature was for life because the culpability of offenders and the gravity of the offenses are so great. Id.
Likewise, where there is a mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence that it is legally required to impose. State v. Morning , supra ; State v. White , 45,915 (La. App. 2 Cir. 2/2/11), 58 So.3d 493. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court has no discretion in sentencing the defendant. State v. Robinson , 47,437 (La. App. 2 Cir. 11/14/12), 106 So.3d 1028, writ denied , 2012-2658 (La. 5/17/13), 117 So.3d 918. Further, a presentence investigation report is an aid to help the court, not a right of defendant, and the court is not required to order one. La. C. Cr. P. art. 875 ; State v. Bell , 377 So. 2d 275 (La. 1979) ; State v. Houston , 50,126 (La. App. 2 Cir. 11/18/15), 181 So.3d 188.
Here, La. R.S. 14:42(D) mandates that a life sentence be imposed upon the defendant for the aggravated rape conviction. In State v. Graham , supra , the Supreme Court did not find unconstitutional the life sentence for juvenile offenders convicted of nonhomicide offenses. Further, because the defendant's life sentence was mandatory under the statute, the trial court was not required to particularize or tailor the sentence to the defendant or to comply with La. C. Cr. P. art. 894.1. State v. Chandler , supra ; State v. Morning , supra . Likewise, a PSI report was not required for the imposition of the mandatory term. State v. Houston , supra . Furthermore, the mandatory life sentence for aggravated rape has consistently been upheld as constitutional. Accordingly, it was the defendant's burden to show, by clear and convincing evidence, that he was the exceptional defendant for which downward departure from the mandatory minimum sentence was justified.
Our review of the record reveals that the defendant did not present any evidence that he was exceptional, in either the sentencing hearing or in the motion to reconsider sentence. The defendant's sentence is presumed to be constitutional because he has failed to provide evidence to rebut the presumption or to show that his particular circumstances are an exception to the constitutional application of the mandatory sentence for aggravated rape. This assignment lacks merit.
ERRORS PATENT
In accordance with La. C. Cr. P. art. 920, we have reviewed this record for errors patent. We have found errors with regard to the defendant's sentence.
Aggravated rape is a sex offense defined by La. R.S. 15:541, and La. R.S. 15:542 provides registration requirements for sex offenders. La. R.S. 15:543 requires that the trial court notify a defendant convicted of a sex offense, in writing, of the *172 registration requirements. The statute also requires that such notice be included on any guilty plea forms, judgments and sentence forms provided to the defendant, and that an entry be made in the court minutes confirming the written notification. This record does not show that the trial court provided the defendant with verbal or written notice of his obligation to register as a sex offender. Therefore, we hereby remand this matter to the trial court to provide the appropriate written notice to the defendant of the sex offender registration requirements and to confirm the written notification on the record. State v. Williams , 49,249 (La. App. 2d Cir. 10/1/14), 149 So.3d 462, writ denied , 2014-2130 (La. 5/22/15), 173 So.3d 1167 ; State v. Hough , 47,308 (La. App. 2d Cir. 8/1/12), 103 So.3d 477, writ denied , 2012-1936 (La. 3/8/13), 109 So.3d 357.
Additionally, the trial court erroneously ordered the defendant to pay court costs or serve 30 days in the parish jail in lieu of payment. An indigent defendant cannot be subjected to default jail time in lieu of the payment of a fine, costs or restitution. State v. Lewis , 48,373 (La. App. 2 Cir. 9/25/13), 125 So.3d 482 ; State v. Mack , 30,832 (La. App. 2 Cir. 6/24/98), 715 So.2d 126. A defendant's indigent status in such a situation may be discerned from the record. Where a defendant is represented at trial by the indigent defender's office, or on appeal by the Louisiana Appellate Project, this Court has considered it error for a trial court to impose jail time for failure to pay court costs. State v. Lewis , supra .
In the instant case, the defendant's indigent status has been shown by his representation at trial by the indigent defender's office and his current representation on appeal by the Louisiana Appellate Project. Thus, the imposition of default jail time by the trial court was in error. Accordingly, we hereby instruct the trial court to delete that portion of the defendant's sentence that includes default jail time for failure to pay court costs.
CONCLUSION
For the reasons set forth herein, we affirm the defendant's convictions. We amend the defendant's life sentence to reflect that he is eligible for parole consideration under the criteria set forth in La. R.S. 15:574.4(D). We hereby order the Department of Corrections to revise the defendant's prison master to reflect that his sentence is no longer without the benefit of parole. Additionally, we amend the defendant's sentences to delete those portions that impose default jail time in lieu of payment of court costs. Further, we remand this matter to the trial court with instructions to provide the defendant with the appropriate notice with regard to the sex offender registration requirements and to note its compliance on the record.
CONVICTIONS AFFIRMED; SENTENCES AMENDED IN PART; AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.

The victims in this matter will be referred to by their initials for confidentiality purposes in accordance with La. R.S. 46:1844(W).

The defendant's date of birth is August 11, 1991.

G.K.'s date of birth is September 1, 1995.

During the trial, G.K. testified that "J.D." was accompanied by another man, known to her as "Pooh Bear." She stated that Pooh Bear also engaged in sexual intercourse with her and threatened to "hurt [her]" if she told anyone about the incident.

A.C.'s date of birth is January 6, 2000. A.C. testified that she had known the defendant all of her life and she had always thought of him as a cousin.

The investigation also revealed that in 2009, the defendant had been charged with carnal knowledge of a juvenile regarding a 14-year-old girl.

The defendant filed his motion for appeal more than 30 days after the denial of his motion to reconsider sentence. Therefore, this appeal is considered as an out-of-time appeal.

"Aggravated rape" is now "first degree rape." La. R.S. 14:42(E) provides:
For all purposes, "aggravated rape" and "first degree rape" mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as a reference to the crime of first degree rape. Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as "first degree rape."

In State v. Craig , supra , the defendant was convicted of aggravated rape and was sentenced to death. The Court declared the defendant's death sentence for aggravated rape unconstitutional, finding that the jury was not given an opportunity to consider aggravating and mitigating factors. Further, the Court found that at the time the crime was committed, "the only responsive verdicts to a charge of aggravated rape were guilty; guilty of attempted aggravated rape; guilty of simple rape; not guilty." Additionally, at the time the crime was committed, attempted aggravated rape was punishable by imprisonment for not more than 20 years, and the sentencing range for simple rape was one to 20 years. Consequently, the Court remanded the case for resentencing.