Judgment rendered January 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,064-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

PERNELL ANTONIO                             Appellant
WASHINGTON

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 358,795

Honorable John D. Mosely, Jr., Judge

* * * * *

WASHINGTON & WELLS LAW FIRM           Counsel for Appellant
By:   Alex J. Washington

PERNELL ANTONIO WASHINGTON            Pro Se

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

SENAE DENEAL HALL
TRENEISHA JACKSON HILL
TOMMY JAN JOHNSON
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

THOMPSON, J., concurring in part and dissenting in part.

HUNTER, J., concurs with written reasons.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Judge John D. Mosely, Jr. presiding. The defendant, Pernell Antonio Washington ("defendant"), was charged with aggravated rape and third degree rape. The jury returned a unanimous guilty verdict on both charges. The defendant was sentenced to life imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence for the aggravated rape conviction, and he was sentenced to 25 years' imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence for the third degree rape conviction.

The defendant now appeals his conviction and sentence.

## FACTS

The defendant and L.W. are cousins and lived in the same apartment from 2008 to 2013. On August 15, 2018, the defendant, born June 5, 1992, was charged by a two-count indictment with the aggravated rape of L.W., born February 14, 2003, in violation of La. R.S. 14:42 (A)(4), and the third degree rape of K.J., born March 17, 2003, in violation of La. R.S. 14:43 (A)(4). The defendant allegedly committed multiple acts of aggravated rape of L.W. between March of 2008 and March of 2013, and the third degree rape of K.J. on or about March 22, 2017. The defendant entered a plea of not guilty and his jury trial commenced March 10, 2020. At trial, the State called a total of 11 witnesses, including the victims and forensic interviewers.

## L.W.

L.W. was the first to testify and identify the defendant during trial as her offender. She recounted an interview she had at the Gingerbread

House[1] when she was 12 years old wherein she denied the rapes. Then when L.W. was 14 years old, she was interviewed a second time at the Gingerbread House. L.W. disclosed to forensic interviewer, Alex Person ("Person"), that she had been raped several times by defendant. When asked why she denied "everything" in the initial interview, L.W. stated that she did not want any trouble or to be disbelieved, or to cause the breakup of the family or to be considered the "black sheep" of the family.

L.W. also testified that she discussed the rapes at "confession night,"[2] but not in the detail described on the Gingerbread House video. L.W. attested that the first rape occurred when she was 5 years old, and that the rapes always occurred when she was left alone with the defendant at the apartment. L.W. testified that the last time the defendant raped her was when she was 10 years old. In graphic detail, L.W. described the anal rape and how the rape was only interrupted when her mother unexpectedly entered the residence.[3] She recounted how the defendant scrambled to his room and she faked being asleep.

**K.J.**

The second victim, K.J., was living with LaPrecious Washington (her godmother and the sister of the defendant) when the defendant began raping her. K.J. testified that the defendant raped her a total of three times – twice in one day. These rapes began in March of 2017. Only after the third rape

---

[1] The Gingerbread House is a child advocacy agency serving the Shreveport community. The agency collaborates with local law enforcement, child protective services, the district attorney's office, and medical and mental health professionals to provide services for abused children and their families.

[2] "Confession night" is a truth game among a group of people. L.W., M.J., Tyra, Cortinez, and Katravion participated in this confession night game.

[3] L.W. described her biological mother, LaToya Wesley, as a drug addict who was in and out of the apartment, often leaving her alone with the defendant.

did K.J. report the incidents, and an investigation ensued.  K.J. was interviewed at the Gingerbread House on videotape, and at trial she verified the contents of the video and identified the defendant as her perpetrator. K.J. testified that she attempted to pull away from the defendant when he touched her inappropriately, that defendant made her perform oral sex on him to the point where she gagged and thereafter he proceeded to rape her. K.J told the jury that she was 14 years old when the defendant assaulted her and knew he should not be "having sex" with her, but she let it happen because she was afraid, because "for one, he had a gun" and "because of how people would look at me and judge me."[4]

**M.J.**

The state presented yet a third witness, M.J., born October 11, 2001, regarding whom the prosecution filed no charges.  M.J. testified that when she was 5 or 6 years old the defendant made her touch his genitals, and then when she was 9 or 10 years old the defendant touched her genitalia. Additionally, M.J. testified that she performed oral sex on the defendant to prevent him from assaulting her friend, Tyra, and other cousins, and that she was afraid to say anything to anyone about the defendant raping her.

On March 13, 2020, the jury returned a unanimous guilty verdict on both charges.  On July 21, 2020, the defendant was sentenced to life imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence for the aggravated rape conviction, and he was sentenced to 25 years of imprisonment at hard labor without the possibility

---

[4] K.J. testified that she had known the defendant all of her life and considered him an uncle.

of probation, parole, or suspension of sentence for the third degree rape conviction.

Defendant appeals his conviction and sentence, urging the following assignments of error: (1) insufficiency of the evidence to support his convictions; and (2) that he is entitled to parole eligibility.

The defendant filed an untimely pro se brief that essentially raised the same arguments as his attorney's brief, but also raised a nonexistent *Ramos vs. Edwards* issue.

## DISCUSSION

### Sufficiency of the Evidence

In his first assignment of error, Defendant argues that the state presented insufficient evidence at trial to sustain a guilty verdict on either charge. He alleges that the witnesses were not credible, noting specifically that L.W.'s testimony was inconsistent because she denied being raped during her initial Gingerbread House interview. The defendant also urges that it was not until years later during a second Gingerbread House interview that L.W. changed her story about the alleged rapes.

Additionally, the defendant points out that his conviction for the third degree rape of K.J. is based solely on her credibility. The defendant asserts that K.J. first reported the alleged rape after she got in trouble for having two boys inside her apartment after locking the younger children outside the residence. The defendant urges that L.W. and K.J. were motivated to falsely accuse him because of external pressures and influences.

The state argues that it presented sufficient evidence at trial to support the defendant's convictions for aggravated rape and third degree rape. It argues that the jury found the state's witnesses to be more credible than the

4

defendant. It contends that the testimony of the state's witnesses shows the defendant's disposition and pattern of behavior toward juvenile females.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992). This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508 *writ denied,* 02-3090 (La. 11/14/03), 858 So. 2d 422.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438. This is equally applicable to the testimony of victims of sexual assault. *Id*. Such testimony alone is sufficient even when the state does not introduce medical, scientific or physical evidence to prove the commission of the offense. *Id*.

At the time of the commission of the alleged acts of aggravated rape, La. R.S. 14:42 (A) (4) stated, in pertinent part:

> A. Aggravated rape is a rape …where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
> …
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
> …
> D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

In relevant part, La. R.S. 14:43 defines third degree rape as follows:

> A. Third degree rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
> …
>
> (4) When the offender acts without the consent of the victim.
> …
> B. Whoever commits the crime of third degree rape shall be imprisoned at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years.

Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to convict the defendant of aggravated rape and third degree rape. A rational trier of fact could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. The testimony of L.W., K.J. and M.J. were sufficient to convict the defendant. The jury clearly chose to accept L.W.'s, K.J.'s and M.J.'s testimony as more credible than that of the defendant. It was within the discretion of the trier of fact to make such a credibility determination, and this court will not disturb this

determination on appeal. This assignment of error lacks merit and is rejected.

**Excessive sentence: constitutional violation**

In his second assignment of error, the defendant argues that the trial court violated his constitutional rights by sentencing him to life imprisonment without benefit of parole. The defendant contends that the sentence violates his Eighth Amendment rights because he was under 18 years old when he committed (some of) the aggravated rapes between 2008 and 2013.

The Eighth Amendment of the United States Constitution bans cruel and unusual punishments. *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), held that the Eighth Amendment ban on cruel and unusual punishment precludes imposition of a life sentence without the possibility of parole for individuals who committed non-homicide offenses as juveniles. Similarly, *Miller v. Alabama,* 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), held that the Eighth Amendment ban on cruel and unusual punishment precludes the imposition of a life sentence without the possibility of parole for a homicide that the defendant committed when he was a minor. *Miller* applies to non-homicide cases *a fortiori,* and thus *Graham* is merely a corollary of the holding in *Miller*.

In *State v. Barrett*, 51,921 (La. App. 2 Cir. 4/11/18), 247 So. 3d 164, *writ denied,* 18-0744 (La. 2/18/19), 265 So. 3d 770, this Court stated that for an Eighth Amendment violation under *Miller*, *supra*, "the appropriate remedy for the defendant's sentence of life imprisonment is to modify the life sentence to make the defendant eligible for parole consideration under the criteria set forth in La. R.S. 15:574.4(D)."

*Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that the Sixth Amendment right to a jury trial requires that every fact which is essential to the punishment imposed upon the defendant (other than prior convictions) must be proven to a jury beyond a reasonable doubt, as reflected by the verdict. In *Apprendi*, the defendant was convicted of a crime which carried a sentencing range of 5 to 10 years. After the conviction, but before sentencing, the prosecution moved under the New Jersey hate crime law to increase the penalty range to 10 to 20 years. The New Jersey procedure for sentencing enhancement under the hate crime statute allowed the matter to be tried by a judge, and prescribed a preponderance of the evidence burden of proof. The United States Supreme Court found this scheme unconstitutional because it deprived Apprendi of his Sixth Amendment right to have the jury determine whether or not the State had proven (beyond a reasonable doubt) his violation of the hate crime statute, *a fact which if so proven would increase the limits of the applicable sentencing range.*

Here, the defendant's sentence for the aggravated rape must be modified to allow parole consideration to the extent allowed by La. R.S. 15:574.4. The defendant was 15 when he first raped L.W. The last rape occurred in 2013 when he was 20 years old. The jury verdict gives no indication of whether the jury found the defendant guilty of the rapes that he allegedly committed as an adult, or that he was only guilty of the rapes he committed as a juvenile. To satisfy *Apprendi, supra,* and *Graham, supra,* the verdict had to specify that the jury found the defendant guilty of the rape he committed as an adult. The verdict bears no such specification, and therefore fails to satisfy that constitutional jurisprudence. Vis-à-vis *Apprendi, supra,*

8

and *Graham, supra*, it is irrelevant whether there was sufficient evidence for the jury to reach an affirmative conclusion regarding the fact that increases the penalty range; in other words, the existence of sufficient evidence is not a valid substitute for a jury verdict specifically finding that fact to have been proven beyond a reasonable doubt.

## CONCLUSION

For the forgoing reasons, we **AFFIRM** the convictions for aggravated rape and third degree rape of defendant, Pernell Antonio Washington, as well as the sentence for third degree rape. However, the defendant's life sentence for aggravated rape without benefits is **MODIFIED** to make the defendant eligible for parole consideration to the extent allowed by La. R.S. 15:574.4.

**CONVICTIONS AFFIRMED; SENTENCE FOR THIRD DEGREE RAPE AFFIRMED; SENTENCE FOR AGGRAVATED RAPE AMENDED TO PROVIDE PAROLE ELIGIBILTY.**

**THOMPSON, J., concurring in part and dissenting in part.**

I write to concur in the decision to affirm both convictions of the defendant and the resulting sentence for the conviction of third degree rape. However, I must respectfully dissent from the majority, who found that the defendant's mandatory life sentence for his conviction of aggravated rape should be modified to provide parole eligibility.

As a threshold comment, I note that the majority's opinion cites *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), in considering defendant's parole eligibility. That analysis appears to be misplaced. The United States Supreme Court in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), held that the Eighth Amendment precludes the imposition of a life sentence without the possibility of parole for individuals who committed non-homicide offenses as juveniles. Because the crime in question, aggravated rape, is a non-homicide offense, I suggest parole eligibility should be analyzed pursuant to *Graham, supra*, rather than *Miller, supra*.

In reaching its conclusion, the majority relied upon considerations pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), relative to the issue of the age of the defendant on the date of the aggravated rapes of L.W. The majority found that as a juvenile offender for some period during his five-year rape spree, the defendant would be eligible for parole. I believe the indictment and jury charge make clear that the defendant was an adult during the majority of the time period (March 2008 – 2013) that he raped the victim, and therefore, the jury was provided sufficient factual information to support the life sentence without

1

benefit of parole as imposed. This is not the scenario faced, or envisioned, by the *Apprendi* court, and I find that case to be inapplicable here.

Neither *Apprendi, supra,* nor *Graham, supra,* contemplate a factual scenario involving a serial offender who began committing his crimes as a juvenile but whose crimes continued into his adult years. Again, of the five total years that the defendant committed the rapes against L.W., the defendant was a major for three of those years, having reached the age of majority on June 5, 2010. L.W. testified that "the end" of the defendant's five-year period of serial rapes occurred in 2013, when the defendant was 21. The child victim's testimony regarding the timing of the rapes and the years that the rapes occurred clearly supports the fact that the defendant raped her while he was an adult. As such, I suggest the trial court correctly sentenced the defendant for the crime of aggravated rape as an adult. For the above reasons, I respectfully dissent from the majority and would affirm the defendant's sentence of life imprisonment without benefit of parole, probation, or suspension of sentence for the aggravated rape of L.W.

**HUNTER, J., concurring.**

This court's role is to fairly apply the law whatever the nature of the crime for which a defendant is convicted.  I write to express the view if any portion of a defendant's criminal conduct, which is the basis for a conviction, occurred while defendant was a juvenile then a life sentence imposed for such a conviction must provide for parole eligibility.

The Eighth Amendment prohibits a sentence of life without parole for a juvenile offender who did not commit a homicide.  *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L.Ed.2d 825 (2010).  A person who was below the age of 18 when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.  *Graham v. Florida, supra.*

In this case, LW testified she was sexually abused by defendant in 2008, when she was 5 years old and defendant was a 16-year-old juvenile.  The evidence presented shows the jury considered conduct which occurred when defendant was a juvenile in finding defendant guilty of aggravated rape.  Thus, as stated in *Graham v. Florida, supra*, since the defendant was under age 18 at the time the offense was committed, he may not be sentenced to life without parole for a nonhomicide crime.

This court has previously determined the remedy for the imposition of a life without parole sentence for a nonhomicide offense committed when defendant was a juvenile is to modify the life sentence to make defendant eligible for parole.  *See State v. Barrett*, 51,921 (La. App. 2 Cir. 4/11/18), 247 So. 3d 164.  Consequently, pursuant to the Eighth Amendment and *Graham*, the defendant's life sentence must be amended to provide for parole eligibility.

1