Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,920-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

GERALD P. BURNS                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 347,306

Honorable Katherine Clark Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Mary Constance Hanes

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

RICHARD SOL FEINBERG
JASON WAYNE WALTMAN
ALEX L. PORUBSKY
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before STEPHENS, THOMPSON, and HUNTER, JJ.

**STEPHENS, J.**

This criminal appeal by defendant Gerald Burns arises from the First Judicial District Court, Caddo Parish, State of Louisiana, where a jury found him guilty as charged of attempted first degree rape, in violation of La. R.S. 14:27 and 14:42, and armed robbery, in violation of La. R.S. 14:64. Subsequently, Burns was adjudicated a third-felony habitual offender and sentenced to 49½ years. He appealed his sentence. Pursuant to *State v. Lyles,* 2019-00203 (La. 10/22/19), 286 So. 3d 407, this court ordered the matter remanded to the trial court for resentencing.[1] *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721. For the attempted first degree rape conviction, Burns was sentenced to 25 years at hard labor, and for the armed robbery conviction, he was sentenced under the Habitual Offender

---

[1] In *State v. Lyles*, 2019-00203 (La. 10/22/19), 286 So. 3d 407, the Louisiana Supreme Court considered the effects of Act 282 of 2017 and Act 542 of 2018 when determining the correct cleansing period for predicate offenses in a habitual offender proceeding. The Supreme Court found that the Legislature apparently created three categories of defendants potentially affected by Acts 282 and 542:

> 1. There are persons ... whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date. Those defendants would be eligible to receive the benefits of all ameliorative changes made by Act 282.

> 2. There are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed between that date and August 1, 2018 (the effective date of Act 542). Those persons would be eligible to receive the benefit of the reduced cleansing period, and they may also have colorable claims to the other ameliorative changes provided in Act 282, although we need not decide that question today.

> 3. Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

Law to 66 years at hard labor, without benefit of probation, parole, or suspension of sentence, to run concurrently. Burns now appeals his resentencing. For the following reasons, we affirm Burns' sentence.

## FACTS AND PROCEDURAL HISTORY

The following factual and procedural background is taken from this court's appellate opinion in *State v. Burns*, *supra*:

> On the afternoon of February 18, 2017, M.A. was reading a book at a cemetery near downtown Shreveport when Gerald Burns held her at gunpoint and took her cell phone. Burns ordered M.A. to come back when she tried to walk away. Burns next told M.A. to stand on a grave before ordering her to strip off her clothing. When she refused to remove her clothing, Burns ran at M.A., who screamed and attempted to escape. Burns tackled M.A. and while the two struggled on the ground, Burns tried to remove M.A.'s pants. After M.A. struck Burns on the head several times with a piece of broken headstone, she was able to run away and contact the police. Burns, who was later found with a head injury, made incriminating statements to the police. M.A. identified Burns in a photo lineup.

> On March 20, 2017, Burns was charged by bill of information with the attempted first degree rape of M.A. in violation of La. R.S. 14:27 and 14:42, and with armed robbery of the same victim, in violation of La. R.S. 14:64. Following a jury trial on October 24-25, 2018, Burns was found guilty as charged on both counts.

> On October 30, 2018, Burns filed a motion for post-verdict judgment of acquittal. The trial court denied that motion on the same day and proceeded with sentencing after Burns waived the delays. Burns's father, Gerald Williams, testified at the sentencing hearing that Burns was bipolar and suffered from schizophrenia. Williams explained that he lived near Burns and supervised his son to ensure that he took medication for his mental illness. Williams testified that he had been out of town for a few weeks when the crimes against M.A. were committed. Although a relative was supposed to watch Burns while Williams was away, Burns would not listen to her.

> At the sentencing hearing, defense counsel requested that the trial court take judicial notice of a report prepared earlier by Dr. Marc Colon for the purpose of a competency determination. Dr. Colon noted in his report that Burns reported a history of

2

bipolar disorder, schizophrenia, and attention-deficit/hyperactivity disorder ("ADHD"). Dr. Colon also noted that deficits shown by Burns on a cognitive assessment were consistent with schizophrenia and mild intellectual disability.

The trial court completed a review of the aggravating and mitigating factors found in La. C. Cr. P. art. 894.1. The trial court also considered Dr. Colon's report. Burns was sentenced to 25 years at hard labor without benefits for the attempted first degree rape conviction. Burns was also sentenced to 25 years at hard labor without benefits for the armed robbery conviction. Both sentences were to be served concurrently, and credit was given for time served. Burns was also ordered to pay court costs and a fine of $50. Burns objected to the sentence.

On October 30, 2018, the State filed a habitual offender bill charging Burns as a third-felony offender, with the armed robbery and attempted first degree rape convictions used as the third felony. The first predicate conviction was Burns's guilty plea on November 17, 2011, to simple burglary committed on or about April 9, 2011, for which he was sentenced to one year at hard labor. The second predicate conviction was Burns's guilty plea on May 21, 2015, to possession of a legend drug on or about April 29, 2015, for which he was sentenced to one year at hard labor, with the sentence suspended. The State would later file an amended habitual offender bill which again charged Burns as a third-felony offender and used the same predicate offenses as in the original bill, but used only the armed robbery conviction as his third felony. Burns pled not guilty to the habitual offender charge.

On November 29, 2018, Burns filed a motion to reconsider and vacate his sentences, arguing that the trial court's analysis of the aggravating and mitigating factors from La. C. Cr. P. art. 894.1 was inadequate to support his sentences. Although defense counsel stated at a hearing on February 28, 2019, that the trial court had denied this motion, there is no ruling on this motion in the record.

Following multiple hearings, on April 8, 2019, the trial court adjudicated Burns a third-felony offender as to his armed robbery conviction and vacated his prior sentence for that conviction. The trial court sentenced Burns to 49.5 years, with his sentence to run concurrently with his sentence for the attempted first degree rape conviction. In its ruling, the trial court incorporated the La. C. Cr. P. art. 894.1 aggravating and mitigating factors it had considered at the prior sentencing hearing. The court also again took judicial notice of Dr. Colon's report.

On April 9, 2019, the trial court amended Burns's habitual offender sentence to be served without benefits. The trial court also filed written reasons for Burns's habitual offender sentence as required by La. R.S. 15:529.1.

*State v. Burns*, *supra* at 722-723.

Burns subsequently appealed his sentence, and this court found:

Burns was convicted of armed robbery and attempted first degree rape on October 25, 2018. The habitual offender bill of information was filed five days later. Thus, Burns falls into the third category of *Lyles* defendants.

Burns committed the armed robbery on February 18, 2017. Under the Habitual Offender Law in effect at that time, he faced a habitual offender sentence of "not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction[.]" La. R.S. 15:529.1(A)(3)(a). A person who commits armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefits. La. R.S. 14:64(B). Thus, as a third-felony offender whose third felony conviction was for armed robbery, Burns faced a minimum habitual offender sentence of 66 years at hard labor.

*State v. Burns*, *supra* at 725.

Accordingly, this court held Burns' sentence of 49½ years was illegally lenient under *State v. Lyles*, *supra*, vacated Burns' sentence, and remanded for resentencing. *State v. Burns*, *supra*.

Following remand, defense counsel filed a motion for downward departure. Burns argued his mental illnesses, namely, bipolar disorder, schizophrenia, attention deficit disorder, and mental retardation, support a downward departure from the minimum sentence. He noted he is on medication and his father looks after him but was out of town when this offense occurred. Burns argued he is "exceptional" because his disorders are manageable when he has family to properly supervise him and that he

4

should not be excessively punished because his father made the mistake of leaving town and allowing someone else to care for him.

Burns further argued his two prior felonies are "atypical" of other offenders. In 2011, Burns pled guilty to simple burglary of a vehicle. He claimed he was caught by officers inside the vehicle when he could not figure out how to work the electric door locks to exit the vehicle. No harm, loss, or property damage resulted from the offense. In 2015, he pled guilty to possession of a legend drug, Seroquel, for which he had a prescription, and received a suspended sentence. Burns argued he was actually factually innocent of that offense and that, due to a change in the law, the offense is now a misdemeanor.[2]

Additionally, Burns asserted that due to changes in the Habitual Offender Law, had he committed this armed robbery eight months later he would have been entitled to a lesser sentence (noting the effective date of November 1, 2017, for the amendments to La. R.S. 15:529.1(A)(3)(a) by Acts 257 and 282.) He also referenced argument made at the initial sentencing hearing wherein defense counsel asked the trial court to take judicial notice of the findings of the doctors on the sanity commission concerning Burns' mental disorders, and further noted the victim suffered "no physical injuries or loss of property," which is a mitigating factor.

Burns argued that these factors render him a "victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances

---

[2] Effective August 1, 2018, former La. R.S. 40:1238.1 was redesignated La. R.S. 40:1060.13, which makes possession of a legend drug punishable by a fine of not more than $500.00, imprisonment for not more than six months, or both.

5

of the case." Thus, Burns submitted that he is a candidate for downward departure. Defense counsel also filed a motion to quash the habitual offender bill based on the fact that Burns' prior felony conviction of possession of a legend drug is now a misdemeanor.

At the sentencing hearing, the trial court vacated both the 25-year hard labor sentence for attempted first degree rape and the enhanced 49½-year sentence for the armed robbery conviction. The trial court then imposed the same 25-year hard labor sentence for attempted first degree rape and imposed the minimum sentence of 66 years without benefits on the third felony offense of armed robbery, to run concurrently. The trial court denied the motion for downward departure and the motion to quash as well as a subsequent motion to reconsider sentence. This appeal by Burns ensued.

## DISCUSSION

On appeal, Burns challenges the 66-year enhanced sentence on the armed robbery conviction. Burns argues his mental illnesses and the nature of his two prior felonies warrant a downward departure from the minimum sentence under the Habitual Offender Law.

The state argues Burns fails to show by clear and convincing evidence that his mental illness qualifies as an exceptional circumstance warranting a downward departure from the constitutional minimum sentence. The state submits the trial court carefully weighed the aggravating and mitigating factors and was within its discretion in imposing the "bare" minimum sentence in light of the egregious nature of Burns' attack on M.A. and his criminal history. The state points out that the trial court expressed its considerations at all three sentencing hearings. Such considerations included the fact that, although his father was his caretaker, Burns was living

6

independently. Further, Burns' acts exhibited deliberate cruelty to M.A. including threats, use of a weapon, and actual violence. The state further cites the trial court's statement at the sentencing on the multiple offender bill that the "record shows no intent of stopping criminal activity on [Burns'] part" and that he is in need of correctional treatment. Finally, the state advises that the trial court took judicial notice of, and considered, Dr. Colon's findings in a sanity report in which Dr. Colon found Burns competent to stand trial despite his mental disorders. The state argues the constitutional minimum sentence is appropriate for this offender and Burns' circumstances do not rise to a level warranting a downward departure under *State v. Dorthey*, 623 So. 2d 1276 (La. 1993).

Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of La. R.S. 14:64. La. R.S. 15:574.4(B)(1). Louisiana R.S. 14:2(B)(21) and (B)(34) designate "armed robbery" and "armed robbery with a firearm" as crimes of violence.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 2019-01845 (La. 6/3/20), 296 So. 3d 1071.

When the defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, review of the sentence on appeal is restricted to that claim. La. C. Cr. P. art. 881.1; *State v. Sewell*, 53,571 (La. App. 2 Cir. 11/18/20), 307 So. 3d 362. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense and is nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, *supra*; *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Wing*, *supra*.

The trial court must state for the record the consideration and the factual basis for the sentence imposed. La. C. Cr. P. art. 894.1(C). The court must consider the defendant's personal history, the defendant's criminal record, the seriousness of the offense, and the likelihood of rehabilitation, but there is no requirement that specific matters be given any particular weight at sentencing. *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. *State v. Reese*, 49,849 (La. App. 2 Cir. 5/20/15), 166 So. 3d 1175, *writ denied*, 2015-1236 (La. 6/3/16), 192 So. 3d 760.

The trial court has wide discretion in imposing sentence within the statutory limits, so absent a showing of an abuse of that discretion, a sentence will not be set aside as excessive. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081. The reviewing court does not determine

whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Dale,* 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031.

As a third-felony habitual offender, Burns faced a sentencing range of 66-198 years at hard labor, without benefit of probation, parole, or suspension of sentence. La. R.S. 14:64; La. R.S. 15:529.1; *State v. Burns, supra.*

The Habitual Offender Law has been held to be constitutional; therefore, the minimum sentences imposed under the statute are presumed to be constitutional. *State v. Bailey*, 51,627 (La. App. 2 Cir. 9/27/17), 245 So. 3d 145, *writ denied*, 2017-1734 (La. 5/18/18), 242 So. 3d 570. Nevertheless, under La. Const. art. I, § 20, the judiciary may determine that a mandatory minimum is excessive in a particular case. *State v. Johnson*, 1996-1263 (La. 6/28/96), 676 So. 2d 552; *State v. Dorthey, supra.*

Downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender and the circumstances of the case. *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 2020-00709 (La. 10/6/20), 302 So. 3d 527; *State v. Chandler*, 41,063 (La. App. 2 Cir. 9/8/06), 939 So. 2d 574, 585, *writ denied*, 2006-2554 (La. 5/11/07), 955 So. 2d 1277, citing *State v. Johnson*, 1997-1906 (La. 3/4/98), 709 So. 2d 672.

In *State v. Johnson, supra*, the supreme court explained:

9

> [I]t is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. This does not mean, however, that the judiciary is without authority to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case. Instead, we have held that courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. *State v. Sepulvado*, 367 So. 2d 762, 767 (La. 1979). In *State v. Dorthey, supra*, this Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. *Id.* at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive.
>
> . . . .
>
> A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See *State v. Dorthey, supra* at 1281 (Marcus, J., concurring); *State v. Young*, *supra*. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.

*State v. Johnson, supra* at 676.

The supreme court in *State v. Johnson, supra,* further held that "while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive." *State v. Lindsey*, 1999-3302 (La. 10/17/00), 770 So. 2d 339, 343, citing *State v. Johnson, supra*. "This is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses." *Id.*

The sentencing court, while mindful of the goals to deter and punish recidivism, must determine whether the particular defendant before it has

10

proven that the minimum sentence is so excessive in his case that it violates Louisiana's constitution. *State v. Lindsey, supra.* The fact that a defendant's last felony was the only violent crime conviction against a person is not an "unusual circumstance" that would support a downward departure. *State v. Lindsey, supra.* A person with prior nonviolent felony convictions who then proceeds to commit a felony involving violence against a person has shown that his criminal conduct is becoming worse. *Id.*

The record shows the trial court properly sentenced Burns under La. R.S. 15:529.1. His sentencing range was 66-198 years, so the imposed term of 66 years, the mandatory minimum, is statutorily compliant. By law, the sentence was to be imposed without probation, parole, or suspension of sentence.

Burns fails to meet his burden of proof to rebut the presumption of constitutionality and to show clearly and convincingly that he is exceptional, such that the minimum sentence is so excessive under the facts of his case that it violates the state's constitution.

In sentencing Burns, the trial court noted it had considered all of the factors enumerated in La. C. Cr. P. art. 894.1(B). It further found the following aggravating factors applied to Burns: the conduct during the commission of the offense manifested deliberate cruelty to the victim; threats or actual violence were used in the commission of the offense; and a weapon/firearm was used in the commission of the offense. The trial court found no mitigating circumstances other than Burns' mental health and diagnoses.

Notably, Burns pled not guilty rather than not guilty by reason of insanity. The sanity commission found Burns competent to stand trial

11

despite his manageable mental disorders. Furthermore, we find it disingenuous that Burns asserts his illnesses are manageable with medication and his father's supervision while he simultaneously seeks leniency on the grounds that he was not medicated, nor under his father's supervision when he committed this horrific attack. Burns lives independently and is responsible for his rent and bills. His father and other family members "look out" for him. However, his father was out of town when this attack occurred. The record does not establish that Burns is under constant supervision, which is what would be required to prevent another offense such as the one perpetrated on M.A. The trial court appropriately considered the egregious nature of this offense. Burns held M.A. at gunpoint, took her cellphone, and then ordered her to stand on a grave and strip off her clothes. When M.A. ran, he chased and tackled her. M.A. beat Burns in the head with a piece of a headstone to escape his grasp.

Burns has two prior felonies, albeit nonviolent ones. Nonetheless, he is a third-felony offender, and the nature of his prior felonies is not taken into consideration for classification of his status as a subsequent felony offender. The same trial court judge presided over the trial and each of the three sentencings of Burns. She was well acquainted with this matter and expressed her belief that Burns' crimes would escalate.

Finally, even had no habitual offender bill been filed, Burns would have faced a maximum sentence of 99 years for armed robbery. On this record, Burns has not demonstrated clearly and convincingly that he is exceptional and, thus, deserving of a downward departure from the minimum sentence. Burns' claim that his sentence is constitutionally excessive is without merit.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Gerald Burns is affirmed.

AFFIRMED.